### Isaac Cowdrey *vs.* Jacob Colburn.

A deed contained a grant of land situated upon a brook and described as follows: "Beginning at the east side of our dam, at a point on the upper side of said dam, five feet on the dam from a large stone at the east end of said dam, and runs easterly . . . . . forty feet; . . . . . thence northeasterly about sixty feet; . . . . . thence westerly about sixty feet to a point in the brook; . . . . . then along said brook southerly to the point on the dam first mentioned. Also the right and privilege to make and forever maintain a flume in and through said dam, and to draw and use sufficient water of the pond above" for a specified purpose, "provided however that said flume shall always be so constructed that the water therein shall not exceed one foot in depth when the pond is full, and also that said" grantee, "his heirs and assigns, shall never draw any water from said pond when no water runs over said dam." The grantors owned the land below the dam, on both sides of the brook. *Held*, that the grantee and his heirs and assigns took no right to use the water otherwise than as mentioned in the final proviso.

A tract of land situated upon a brook was conveyed with a restricted right to use the water. The grantors, who were the owners of the adjoining land, afterwards conveyed to the same grantee a larger lot, describing it by boundaries which included the lot first conveyed, but reciting that the former lot was conveyed by the grantors to the grantee "for a water privilege, which is not conveyed or sold in this deed," and referring to the former deed. *Held*, that the right of the grantee to the use of the water was not enlarged by the second deed.

Tort for an injury to the plaintiff's water privilege on Monoosnock Brook, in Leominster, by wrongfully drawing water therefrom.

At the trial in the superior court, before *Morton*, J., without a jury, it appeared that the plaintiff owns a shop and land on the westerly side of the brook, and the defendant a shop and land on the easterly side. Both parties derive their title from Luke Wilder and Josiah Johnson, who in 1824 owned in common the land on both sides of the brook, and on the 4th of May in that

year executed to Levi Johnson a deed, in which the granted premises were described as follows :-

" A certain tract of land situated a few rods from the meeting-house in said Leominster, on the right side of the road leading to Luke Divoll's, and on the east side of the brook, nearly opposite to our blacksmith's shop, containing about nine or ten rods o land, bounded as follows : Beginning at the east side of our dam adjoining our said shop at a point on the upper side of said dam, five feet on the dam from a large stone at the east end of said dam, and runs easterly in a line with said upper side of said east part of said dam forty feet to a ·stake and stones; thence northeasterly about sixty feet, nearly at right angles with the front line, and in the direction of a poplar-tree near by on the margin of George. Chase's mill-pond, till it comes to the road leading to Luke Divoll's; thence by said road westerly about sixty feet to a point in the brook which is even with the upper corner of the eastern abutment of the bridge on said road ; then along said brook southerly to the point on the dam first mentioned.  Also the right and privilege to make and forever maintain a flume in and through said dam, and to draw and use sufficient water of the pond above said dam to do the turning, sawing and other usual business of a wheelwright, provided, however, that said flume shall always be so constructed that the water therein shall not exceed one foot in depth when the pond is full, and also that said Levi, his heirs and assigns, shall never draw any water from said pond when no water runs over said dam."

On the 23d of November 1833 they executed another deed to Levi Johnson, in which the general boundaries of the granted premises included the lot above described, and the following sentence was added to the description : " About nine or ten rods of land, the northwest corner of the above piece of land, was conveyed by said Luke and Josiah to the said Levi by deed, for a water privilege which is not conveyed or sold in this deed, dated May 4th, 1824; reference to said deed recorded in the registry of deeds, book 256, page 108."

The defendant owned all that was conveyed by the above two

deeds; and the plaintiff owned all the rest of the premises formerly owned by Luke Wilder and Josiah Johnson.

The answer admitted that Levi Johnson used the water in accordance with the provisions of the deed of 1824, and there was evidence tending to prove that those owning the defendant's estate have never exercised or claimed the right to exercise any control over the water in the pond except to draw the same as stated in the deed, and that the plaintiff and those owning his estate have exercised such control and kept the dam in repair. And certain deeds and agreements were introduced to show that the practical construction of the above deeds by the parties was, that the right to the use of water which was conveyed by them was a restricted one. The defendant contended that under the two deeds he had acquired a title to the land to the thread of the stream and an unrestricted right to one half of the water, and that, if any restrictions were imposed by the deed of 1824, they were removed by that of 1833; but the judge declined so to rule, and ruled that the defendant had only the right to use the surplus water when the water in the pond would run over the dam. The defendant's flume was built within the boundary lines described in the first deed, and it appeared that he had so changed it that the outlet from the pond therein was lower than the dam was in 1824; and the judge accordingly found for the plaintiff. The defendant alleged exceptions.

*C. H. B. Snow*, for the defendant, cited *Pratt* v. *Lamson*, 2 Allen, 275; *Tolman* v. *Sparhawk*, 5 Met. 469.

*P. C. Bacon & C. H. Merriam*, for the plaintiff, cited *Sprague* v. *Snow*, 4 Pick. 54; *Hurd* v. *Curtis*, 7 Met. 94; *De Witt* v. *Harvey*, 4 Gray, 486; *Bowen* v. *Conner*, 6 Cush. 135; *Newell* v. *Hill*, 2 Met. 180; *Boynton* v. *Reed*, 8 Pick. 332; *Dryden* v. *Jepherson*, 18 Pick. 390; *Stone* v. *Clark*, 1 Met. 378; *Hatch* v. *Dwight*, 17 Mass. 289.

HOAR, J. The ruling of the judge before whom the cause was tried was right, and the action was maintained, if the construction of the deeds of May 4, 1824, and of November 23, 1833, for which the plaintiff contends, is the true one. And

though the expressions used are somewhat obscure and confused, we are all of opinion that the intention of the parties can be ascertained, and that their meaning expressed in the language of the deeds was rightly interpreted at the trial.

It is conceded that the plaintiff owns all the land and water power in question which has not been conveyed to the defendant under and by virtue of those deeds. The deed of 1824 first conveys a piece of land by metes and bounds, including a part of the dam. It then grants the right and privilege to make and forever maintain a flume through the dam, and to draw water from the pond sufficient for the work of a wheelwright, " provided, however, that said flume shall always be so constructed that the water therein shall not exceed one foot in depth when the pond is full, and also that" the grantee, " his heirs and assigns, shall never draw any water from said pond when no water runs over said dam." It is argued for the defendant that the grant of the land which includes a part of the dam is absolute, and therefore gives the right to take down the dam, or draw water through it to any extent, within that part; and that the subsequent grant of the right to make a flume is in addition to what was before described, and was intended as a further easement in the rest of the dam, with the limitations contained in the proviso. But this appears to be an unnatural and forced construction, and inconsistent with the condition of things existing, as well as with the apparent object of the conveyance. The grantee owned no land below the dam, into which water would be discharged by a flume constructed in any other part of it than the five feet included in the land first conveyed. The restriction upon taking water from the pond is general, and applicable to one part of the dam as much as to another. Indeed, it would be of little importance or value to the grantors, if the right to remove five feet of the dam, or to draw water without restriction through so much of it, had been already, according to the understanding of the parties, granted without qualification. The whole difficulty of construction would perhaps have been obviated by a mere change in punctuation, if the scrivener who drew the deed had used a

semicolon instead of a ·period at the end of the description of the boundaries of the land conveyed. But being of opinion that the final proviso, restricting the drawing of water from the pond, was intended to constitute a restriction upon the use of the water through any part of the dam, and was inserted for the benefit of the grantors and all who might afterward take title under them, the case falls within the authority of *Sprague* v. *Snow*, 4 Pick. 54, and indeed is a stronger case than that. The right reserved by the grantors is in the nature of a perpetual easement in the part of the dam granted, giving the grantee a limited use of the water by means of the flume, the right to all the rest being retained by the grantors. *Bowen* v. *Conner*, 6 Cush. 132.

The deed of November 23d 1833 is of a larger piece of land, including in its general boundaries the piece of land described in the deed of 1824, but excepting that piece from the conveyance as a piece which had been conveyed before " for a water privilege which is not conveyed or sold in this deed." We think that the true construction of this conveyance excepts the privilege secured to the grantors by the deed of 1824, as well as whatever else was described in it.

The other agreements and deeds set forth in the bill of exceptions, whatever may have been their legal effect upon the rights or remedies of the parties to this action, which it becomes unnecessary to consider, show at least that the construction which we have given to the deeds of 1824 and 1833 is that which has been practically adopted and acted upon from the time of their execution until a very recent period.      *Exceptions overruled.*