## SPENCER STONE COMPANY ET AL. *v.* SEDWICK.

[No. 8,074. Filed June 5, 1914. Rehearing denied October 29, 1914. Transfer denied January 29, 1915.]

1. EASEMENTS.—*Severance of Ownership.—Continuance of Use by Operation of Law.*—Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of the ownership, a grant or reservation to continue the use arises by implication of law. p. 69.

2. EASEMENTS.—*Creation.—Lease.—Continuance by Operation of Law.*—Where an easement over land for a right of way for the construction of a switch to a stone quarry was provided for in a lease of the quarry, the nature, extent and duration of such easement as originally created, and the question of whether the switch could be maintained after the expiration of the lease and after severance in the ownership of the land, must be determined from a consideration of the provisions of the lease. p. 71.

3. EASEMENTS.— *Lease.— Construction.— "Premises".—* Under the lease of a stone quarry on land subsequently conveyed to others, for the term of twenty-five years granting to the lessee the exclusive right to quarry stone and to maintain a switch, beginning at a specified point on a certain railroad "on said premises", and running thence into the quarry opening "on said premises" and providing that on termination of the lease lessee could remove "from said premises" all buildings, side tracks, switches, and property of every kind which had been placed thereon by it, the word "premises" is to be given its ordinary meaning and includes not only the property rented for the quarry, but also that subject to the easement for the switch; and hence the lease as a whole is inconsistent with any intention that the easement should continue after the expiration of the term, so that the land of plaintiff, who acquired that portion occupied by the switch, could not be burdened with the further maintenance of same on the theory that the right to do so arose by implication of law. pp. 71, 78.

4. WORDS AND PHRASES.—*"Premises".—"Appurtenances".—"Tenement".*—The word "premises" as used in a lease or instrument of conveyance ordinarily means "lands and tenements" and includes lands and everything appurtenant thereto, and may apply to an easement as well as to the land conveyed, since the term "appurtenances" includes a right of way incident to land or an

estate, and "tenement" is anything·which may be holden, that is, anything subject to tenure.   p. 77.

5.   LEASE.—*Record.*—*Effect.*—Where a lease has been duly recorded, the various assignees thereof and the subsequent owners of the land affected thereby take with at least constructive notice of its contents, and are bound by its terms.   p. 78.

6.   APPEAL.— *Review.*— *Evidence.*— *Findings.*— *Harmless   Error.*— Where there was sufficient evidence to sustain the finding of facts, and the latter would not have been changed had excluded evidence been admitted, error, if any, in the exclusion of such evidence was harmless.   p. 79.

7.   EASEMENTS.—*Lease.*—*Rights of Third Persons.*—Where, under a lease to a stone quarry together with right of way to build a switch connecting with a railroad, the railroad company could acquire no right to the use of such switch except the right to transport stone from the quarry as the agent of the operator thereof, the authority of the railroad company over such switch terminated with the expiration of the lease.   p. 79.

From Owen Circuit Court; *Joseph W. Williams,* Judge.

Action by Nancy Sedwick against the Spencer Stone Company and another.   From a judgment for plaintiff, the defendants appeal.   *Affirmed.*

*Willis Hickam, John C. Robinson, Samuel O. Pickens* and *Owen Pickens,* for appellants.

*Homer Elliott, J. R. Cauble* and *I. H. Fowler,* for appellee.

CALDWELL, J.—Appellee's complaint is in three paragraphs.   By the first she seeks to enjoin appellants from the use, and to compel the removal of, a certain railroad switch extending from the railroad of appellant railroad company over her lands to a stone quarry, owned and operated by appellant stone company, on adjoining lands. By the second, she seeks to quiet her title to the lands against all claims of appellants, and by the third she sues for compensation for the use of the switch and the lands occupied thereby.   Each appellant filed an answer·in general denial, and filed also a cross-complaint, alleging that it was the owner of a perpetual easement over appellee's lands as and for a right of way for the switch, and praying that its title

to such easement be quieted, and that its right to maintain and operate the switch be established, and that appellee be enjoined from interfering with appellant's respective rights in the premises.   Appellee filed a general denial to each cross-complaint.

At the request of the parties the court made a special finding of the facts, and stated conclusions of law thereon. The material facts as found by the court are in substance as follows:   On and prior to March 8, 1884, Buckner Dickerson was the owner in fee of a tract of land in one body, containing 172 acres, being the east half of the northeast quarter of section 30, except 5 acres off the south end thereof, and about 97 acres off the west side of section 29, township 10 north, range 3 west, in Owen County, Indiana, which tract of land included the tract described in the complaint as owned by appellee, and also the tract described in the cross-complaints as owned by appellant stone company.   The Spencer and Worthington highway extended in a northerly and southerly direction through that part of the lands so situate in section 29.   West of the highway, and near the north section line was a stone quarry, known as the Sweitzer quarry, from which stone was quarried and shipped by railroad, and sometimes hauled away in wagons.   A line of railroad then owned by the Indianapolis and Vincennes Railroad Company and operated by the Pennsylvania Company, and now owned and operated by appellant Vandalia Railroad Company, ran along and upon the east side of the tract of land.   The elevation of the quarry was about forty feet above the line of the railroad.   The prior operation of the quarry had not been very extensive or successful because of difficulty of access to the quarry by railroad. On March 8, 1884, said Dickerson, by lease in writing duly acknowledged and recorded, leased to the Indiana Stone and Cement Company, its successors and assigns, for a period of twenty-five years from date, a part of the tract lying west of the highway, being the tract of land now owned by appel-

lant stone company, and including that part on which the Sweitzer quarry was situate, but not including any part of the lands now owned by appellee or any part of the lands on which the switch described in the pleadings is situated. By the provisions of the lease, the lessee and its successors and assigns, were granted the exclusive right during the term of the lease to quarry stone on the leased premises, and to remove it therefrom and to manufacture lime and cement from such stone; also the authority to construct and maintain a side track or switch beginning at a point on said railroad near the southeast corner of said lands, running thence in a northwesterly direction to the quarry; also to remove from the premises at the expiration of the lease all buildings, side tracks, switches, etc., which had been placed on the premises by lessee or its successors or assigns, or by the prior operators of the quarry. The lease by its terms expired at the end of twenty-five years from the date of its execution, and on March 8, 1909, the lease expired, and it has not been extended or renewed. On March 29, 1888, Buckner Dickerson conveyed said 172-acre tract by warranty deed to Orris T. Dickerson, except about three acres in the northeast corner thereof, reserving the rents and profits of the tract conveyed during grantor's natural life. February 28, 1895, Orris T. Dickerson, by warranty deed, conveyed to Aden Baber that part of the tract situate in section 29, except three acres in the northeast corner. By quitclaim deed, dated June 25, 1897, Buckner Dickerson conveyed to Baber the tract situate in section 29, except the part thereof, lying on the west side of the highway, and also "except the right of way for switch purposes from the stone quarry at the northwest corner of section 29 along the railroad switch in a southerly direction, to the Indianapolis and Vincennes Railroad, as set out in the lease thereof now on record in the recorder's office of Owen County, Indiana, during the continuance of such lease." By deed dated June 28, 1897, Baber conveyed to Buckner Dicker-

son by warranty deed all that part of section 29 lying west of the highway. July 12, 1889, Buckner Dickerson conveyed by quitclaim deed to Mary M. Dickerson, all that part of section 29 that lies west of the highway, the conveyed tract including the quarry premises, and on March 1, 1900, Mary M. Dickerson and Orris T. Dickerson, her husband, by warranty deed conveyed to Perry H. Blue, trustee, the tract of land on which the quarry is situated, which tract Blue conveyed to appellant stone company on May 21, 1900. Said appellant is now the owner of a part of the tract of land situated west of the highway and on the tract operates a stone quarry, and is engaged in the business of quarrying and crushing stone, and ever since May 21, 1900, has used the switch in shipping the product of the quarry. January 28, 1904, Baber, having died intestate, his widow and heirs by warranty deed conveyed to appellee all the tract situated in section 29, except three acres in the northeast corner thereof, and except also that part thereof lying west of the highway. Appellee has owned this tract continuously since said date, and the switch is located on the tract.

Immediately subsequent to the execution of the lease, the lessee constructed the switch provided for thereby over the premises then owned by Buckner Dickerson, and now owned by appellee, a total length of 1,880 feet from the railroad to the southeast line of the quarry premises. On the completion of the switch, the lessee began to quarry stone from the quarry, and to transport it over the switch track to the railroad, and it and its successors and assigns so continued until the lease by successive assignments in writing, duly executed and recorded, passed into the hands of The Spencer Lime and Ruble Company, on February 3, 1888, which company continued to operate the quarry, and to use the switch under the terms of the lease until March 1, 1900, being the date on which the quarry premises were conveyed to Perry H. Blue, trustee. Appellant, Spencer Stone Company, after

it acquired title to said quarry premises, on May 21, 1900, commenced to operate the quarry and switch, and so continued until the expiration of the lease on March 8, 1909, and thereafter so continued and is now so operating the quarry and switch and is transporting over the latter about 400 carloads of stone per year. No other right or authority was ever given by the owners of the real estate traversed by the switch to the lessee or its successors or assigns, or to any one else to use the switch except the right and authority given by the lease. The switch is the most practical and convenient way by which the product of the quarry can be shipped by railroad, and is the most accessible route from the stone quarry to the railroad. The switch is and ever since its construction has been reasonably convenient, accessible and necessary to the fair enjoyment of the stone quarry premises. In May, 1909, after the expiration of the lease, and before the bringing of this action, appellee notified each appellant that the lease had expired, and that if they continued to use the switch they would be regarded as trespassers. Appellant railroad company is the successor of the Indianapolis and Vincennes Railroad Company, and the former during the six years last past has hauled about 400 carloads of stone annually from the quarry over the switch.

On the finding the court stated conclusions of law to the effect that appellee was entitled to have her title to the lands quieted as against the easement claimed.

The first question presented is respecting the correctness of the conclusions of law. Appellants base their contentions solely on certain legal principles well stated in

1. *John Hancock, etc., Ins. Co. v. Patterson* (1885), 103 Ind. 582, 2 N. E. 188, 53 Am. Rep. 550, as follows: ''Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such

ownership, whether by voluntary alienation or by judicial proceedings, there arises by implication of law a grant or reservation of the right to continue such use. In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made.'' The soundness of the foregoing as legal abstractions can not be doubted, and if applicable to the situation presented here, then appellants are right in their contention.

Stated concretely, appellants' position is as follows: That in 1884, Buckner Dickerson owned the entire title to all the tract of land situated in section 29, and that on that portion thereof situated west of the highway, the quarry was located; that in that year he caused or authorized the quarry to be connected with the railroad by means of the switch, extending from near the southeast corner of the lands, over a portion thereof to the remaining portion on which the quarry was located; that while he owned the entire tract, he caused or authorized the switch to be used in transporting stone from the quarry to the railroad, and caused or authorized the use to continue openly and uninterruptedly, and that it did so continue until there was a severance of the unity of the title to the entire tract by which appellee eventually became the owner of that part thereof upon which the switch was located, and appellant stone company became the owner of that part of the remaining portion on which the quarry was situated; that the use so created appeared to be permanent in its nature, and is reasonably necessary to the profitable and successful operation of the quarry, and that as a consequence, when Buckner Dickerson severed the unity of title by conveying to third persons either the one or the other of the portions, the law implied that he either created or reserved the right to use the switch, and the right of way

upon which it was located, as an easement appurtenant to the tract of land containing the quarry, and that such easement passed with each successive conveyance of the tract, and that the successive owners of the other portion of the lands took the same subject to or burdened with the easement.

We must first consider and determine whether under the facts here, the switch constituted an apparently permanent and obvious servitude on the lands traversed by it, and what, if any, consequent implications of law arise.

Plainly, it was an obvious servitude upon the lands, but as to whether it was apparently permanent depends on all the facts as they existed, and as they were known actually or constructively by persons interested. The servitude in its origin was expressly created by the terms of the lease. Such being the case, its nature, extent and duration, as originally created, and as between the parties to the instrument, and also subsequent purchasers or assigns with notice actual or constructive, must be determined from a consideration of the provisions of the lease. *Jann* v. *Standard Cement Co.* (1913), 54 Ind. App. 221, 102 N. E. 872; *Bowen* v. *Conner* (1850), 60 Mass. 132; *Cowdrey* v. *Colburn* (1863), 89 Mass. 9; Jones, Easements §§261, 370. "Where an easement is created or reserved in express terms by deed, the only question ordinarily open for consideration concerns the proper construction of the language of the deed." Washburn, Easements (4th ed.) 44.

It seems to be conceded here that the controversy involves only the construction of the lease. Both appellee and the appellants base their respective rights on its provisions. It is not claimed that in or out of some subsequent transaction an easement arose different from or of longer duration than that created by the lease. Under such circumstances, it would seem that implications and inferences have no place in this case, except as they may be appealed to as aids in the construction of said lease; that

is, it is not claimed here that any easement or right of way arose by implication of law or by implied grant, but it is contended that by the terms of said lease, the switch track and its authorized use constituted an apparently permanent servitude upon the lands now owned by appellee, and that by the subsequent severance of the title to the entire tract by the conveyance of one or the other of the portions thereof, there arose by implication of law a grant or reservation of the right to continue the use as created by the lease, servient upon the lands now owned by appellee. It therefore becomes necessary to construe said lease.

Appellants admit that the term of said lease in its relation to the quarry was twenty-five years, with certain privileges of optional renewal as stated therein, but they contend that while the switch was to be used in connection with the quarry, the specific time limit in the lease is not applicable to the switch; that while the lease as to the quarry might expire by limitation, the switch was to remain permanently. Appellants argue that the location of the quarry, the previous difficulty encountered in transferring stone to the railroad, and the fact that the switch was placed on the most convenient route to the quarry, and that it is reasonably necessary to its successful operation, all as shown by the finding, indicate an intention of the parties that the switch should remain as a permanent appurtenance of the quarry. As between the parties to the lease and their successors who took with notice actual or constructive, such argument would not be entitled to any weight as against a written contract expressly limiting the existence and use of the switch to a definite and specified period, or if such a limitation appears from a fair construction of the lease. As indicated, however, the facts upon which the argument is based should be considered in construing the lease, if it is ambiguous. Appealing to the lease, rather than to the finding, appellants argue from the provision authorizing and requiring the switch track to be built and the provision granting the right

to remove the property at the expiration of the lease, that the servitude of the switch was intended to be permanent. As the finding in these respects fairly reflects the lease, we quote from the latter. By the first specification, the described lands are leased to the "lessee, successors and assigns for the term of twenty-five years from the date thereof." The material part of the second specification is as follows: "That the said second party, their successors and assigns shall, during the term of years aforesaid, have the only and exclusive right  *  *  *  to dig, quarry  *  *  * any and all stone or clay  *  *  * ; also the full power and authority to lay out, construct and maintain a side track or switch, beginning at a point on the Indianapolis and Vincennes Railroad, south of the Bluff spring on said premises, and running thence  *  *  *  in a northwesterly direction into the quarry opening, known as Sweitzer's quarry on said premises. And the second party agrees and binds themselves to build said side track as soon after the execution of this indenture as the same may be done reasonably." There follow provisions on the subject of cattle guards and crossings, and also on the erection of buildings, etc. The third specification is as follows: "That upon the termination of this lease, at any time, the said second party, their successors and assigns, shall have the right and privilege to remove from said premises all buildings, side tracks, switches, structures, fixtures, machinery and other property of whatever kind, which may have been placed thereon by the said second party their successors and assigns, including the switch, side track, buildings, structures, limekilns, etc., now thereon."

The term of the lease is twenty-five years. The right is granted "during the term of years aforesaid" to quarry and remove stone, also the power and authority to "lay out, construct and maintain a side track", etc.

To us it seems apparent that by such language the lessee was authorized to maintain the switch only during the term

of the lease. The easement of the side track was created expressly to promote the benefit of the quarry operations, which operations were limited to the term of twenty-five years. Under the lease, the lessee could not legally have operated the quarry beyond the term, and as the side track was a mere incident to the lease, or a mere right appurtenant to the principal right created thereby, such appurtenant right terminated also with the principal right.

Appellants concede that the foregoing is a reasonable construction of the lease, if there be considered only the provisions creating the right to operate the quarry and the right to construct and use the switch, but they argue that the subsequent language, by which the lessees are not only authorized to construct the switch, but also are required to do so, modifies the preceding provisions. It is argued that since the lessor required the side track to be built, he must have intended it to be permanently appurtenant to the quarry, and for permanent use in connection therewith, under succeeding operators, after the lease had expired. The facts found are sufficient fully to explain why the lessor required the switch to be built, even if intending it to remain but twenty-five years. The prior operations of the quarry had not been successful on account of the crude process in use to transport the quarried stone to the railroad. By the terms of the lease, the lessor was to receive a royalty on the output. He was, therefore, interested in the amount of such output. The fact that the use of such a switch might reasonably be expected to increase the output is a sufficient explanation of why the lessor required it to be built. It is not necessary to assume that the switch was to remain permanently in order to give the indicated facts and motives full force, and consequently the requirement is not inconsistent with the conceded construction of the lease, based on said preceding provisions alone, that the life of the switch is limited to the term of the lease.

But it is argued that the provision by which the lessee

reserved the right to remove certain property from the premises at the termination of the lease is plainly limited to the tract of land upon which the quarry proper was located, and that as the court found that no part of the switch in question is on such tract, the lease contract did not authorize or contemplate its removal at the termination of the lease, and hence that the parties must have intended that such switch should remain permanently, and that the lessor thereby imposed on the tract of land traversed by the switch a permanent servitude for the use of the tract occupied by the quarry. Such conclusion is reasonable if the premise is sound. The reserved right is "to remove from said premises all buildings," etc. We are, therefore, required to determine the scope of the word "premises", as used in the lease and especially in the quoted part thereof. The first specification of the lease declares a purpose to demise and lease "the same premises" as had theretofore been leased to other parties, and indicates that the description will follow. There does follow in said first specification a specific description of the lands upon which the quarry is located, and in the second specification a general description of the course of the contemplated switch. The second specification grants a right to mine and remove "from said premises" stone, etc., and also provides that the southern terminus of such switch shall be south of the Bluff Spring "on said premises," and running thence so as not to injure said spring in a northwesterly direction into the quarry opening, "on said premises". The spring is not on the land occupied by the quarry, and the point indicated for such southern terminus is more than 1,800 feet south of the land. It, therefore, seems apparent that the word "premises" was used where the reference was to said lands occupied by the quarry alone, and where the reference was to the switch alone, or where the reference was to both. A consideration of the third specification confirms us in this conclusion. By such specification, there is reserved to the lessee the right

to remove from the premises at the termination of the lease, first, all buildings, side track switches, structures, fixtures, machinery and other property of whatever kind which may have been placed thereon by the said second party, and second, including the switch, side track, buildings, structures, limekilns, etc., thereon. The second specification of the lease provides that the second party shall or may place on the premises the side track or switch, and also buildings, machinery and all other structures and fixtures, etc. It will be observed that the language used in authorizing structures to be placed on the premises is substantially the same as that used in providing for the removal of structures placed on the premises by second party, and, in our judgment, the language used in each case refers to the same structures. There are other considerations that confirm us in our conclusion. Thus, it is a matter of general knowledge that the material in a side track 1,880 feet long is of such value that the question of its removal at the expiration of the lease and its consequent ownership is important. The lease here specifically provides that the lessee may remove side tracks and switches at the expiration of the lease. If, as appellants contend, the particular side track was to remain, it would seem reasonable to presume that the lessor would have required a specification to that effect. The omission of such a specification is significant, especially in view of the fact that the interests of the parties are otherwise minutely safeguarded. Moreover, the argument is that it must have been the intention of the parties that such side track should remain, since, as found by the court, it was reasonably necessary to the proper operation of the quarry. The northern terminus of such side track is the proximate line of the quarry. The specification providing for the removal of the property indicates that such side track was continued into the grounds occupied by the quarry. The side track then may be considered in two portions, (1) that part that terminated at the quarry line, (2) the extension thereof into the quarry grounds.

It .is conceded by appellants that under the terms of the lease, the lessee was authorized to remove the latter, but it is argued, that it must have been the intention of the parties that the former should remain, since, as found by the court, it was reasonably necessary to the proper operation of the quarry, but if so, why was not the latter as such extension also reasonably necessary to that end? If it should be said that the lessor owned the ground on which the quarry was located, and that there was nothing to indicate that he contemplated conveying it, and that, therefore, he may have had in mind that he could easily restore such extension on its removal at the expiration of the lease, then it may be said that the same argument applies with equal force to the switch under consideration.

A consideration of the meaning of the term "premises", in the light of the authorities, still further confirms us in our conclusion. Thus, the term is commonly held 4. to mean "lands and tenements". *State* v. *French* (1889), 120 Ind. 229, 22 N. E. 108, 735; *Kunkle* v. *Abell* (1908), 170 Ind. 305, 84 N. E. 503; 2 Bouvier, Law Dict. 729; 31 Cyc. 1163. It includes lands and everything appurtenant thereto. *Winlock* v. *State* (1890), 121 Ind. 531, 23 N. E. 514. A public street and alley adjacent to a brewery are part of the premises. *Bandalow* v. *State* (1878), 90 Ill. 218, cited in *Winlock* v. *State, supra.* It embraces any definite portion of land and the buildings and appurtenant structures situate thereon, over which the owner or occupant has a right to and does exercise authority and control. *Kunkle* v. *Abell, supra.* As used in the *habendum* of a deed it may apply to the easement as well as to the land conveyed. *Deavitt* v. *Washington County* (1902), 75 Vt. 156, 53 Atl. 563; 31 Cyc. 1163. The term "appurtenances" includes a right of way incident to land or an estate. Bouvier's Dict., title, "appurtenances". Such right of way passes as an appurtenance with a conveyance of the estate. *Parish* v. *Kaspare* (1887), 109 Ind. 586, 10 N. E.

109. Even though the deed does not in terms mention or convey appurtenances. *Ross* v. *Thompson* (1881), 78 Ind. 90. Jones, Easements §23. A tenement is anything which can be holden; that is, anything subject to tenure. Hopkins, Real Property 3. It includes a right reserved in a deed of erecting or building a dam on the banks of a creek at a place specified. 28 Am. and Eng. Ency. Law (2d ed.) 43; *Jackson* v. *Buell* (1812), 9 Johns. *298.

It is therefore apparent that the term "premises" as used in said specification authorizing the removal of the switches, etc., is broad enough to include said right of way 3. extending over appellee's land, and that such right of removal existed by the terms of the. lease.

We hold that under the provisions of the lease, the right to maintain and operate the switch track is limited to the term of twenty-five years, and that it expired on March 8, 1909, as found by the court. That such was the understanding of Buckner Dickerson appears from the deed which he executed to Aden Baber on June 25, 1897, conveying to Baber his life estate in the lands now owned by appellee. By that deed he in effect reserved the tract west of said highway and excepted from the conveyance "the right of way for switch purposes from the stone quarry in the northwest corner of said section 29, along the railroad switch in a southerly direction, to the I. & V. Railroad, as set out in the lease thereof, now on record in the recorder's office of Owen County, Indiana, during the continuance of such lease." It is not denied that the easement created by the lease passed down along the line of said subsequent transfers and assignments as servient upon the lands now owned by appellee.

The lease, having been duly recorded on April 19, 1884, the various assignees thereof and the subsequent 5. owners of said respective tracts of land, including appellant stone company and appellee, took with at

least constructive notice of its contents and are bound thereby. Jones, Easements §118.

As we have said, it is not claimed that a way of necessity other than or different from that created by the lease, arose by implication out of any of the transactions or conveyances subsequent to the execution of the lease, and we therefore do not consider that question. The court did not err in its conclusion of law.

It is urged that the evidence is insufficient to sustain the finding, and also that the court erred in excluding certain evidence offered, and in omitting certain facts from 6. the finding. The evidence favorable to the finding is sufficient to sustain it. The evidence offered and excluded, had it been admitted, and the facts claimed to be omitted from the finding, had they been inserted, would not have been controlling, and therefore, no harmful error was committed in these respects.

Under the finding, appellant railroad company could acquire no right to the use of said switch, except the right to transport stone from said quarry, as the agent of the 7. operator thereof, under the lease. The lease having expired, whatever authority said railroad company may have had theretofore as such agent to the use of such switch, has terminated. Jones, Easements §368; *Louisville, etc., R. Co.* v. *Malott* (1893), 135 Ind. 113, 34 N. E. 709.

Judgment affirmed.

NOTE.—Reported in 105 N. E. 525. As to implied grant of easement by severance and sale of property, see 34 Am. St. 708; 122 Am. St. 206. As to creation and conveyance of easement appurtenant, see 136 Am. St. 680. See, also, under (1) 14 Cyc. 1185; (2) 14 Cyc. 1201; (3) 14 Cyc. 1190; 31 Cyc. 1163; (4) 31 Cyc. 1163; 3 Cyc. 565; (5) 24 Cyc. 906; (6) 38 Cyc. 1457; (7) 14 Cyc. 1190.