SORRENTINO *v*. CUNNINGHAM ET AL.

[No. 16,696. Filed February 13, 1942. Rehearing denied March 24, 1942. Transfer denied May 1, 1942.]

*Edwin H. Smith* and *Coburn T. Scholl,* both of Indianapolis, for appellant.

*H. B. Hartsock,* of Indianapolis, and *Parr, Parr & Parr,* of Lebanon, for appellees.

BLESSING, J.—The appellees (plaintiffs below) brought this action for an injunction against the appellant, Philip Sorrentino and one Virgil B. Louden to restrain them from selling intoxicating beverages except for sacramental, medicinal or mechanical purposes. The action was thereafter dismissed as to the said Louden. The appellant's place of business was and is located in the original Town of Irvington, which is now a part of the City of Indianapolis. The complaint for injunction was based upon the fact that the plat of the original Town of Irvington contained certain restrictions, included among which was a restriction against subsequent owners from selling on the premises included in said original plat any intoxicating beverages except for sacramental, medicinal or mechanical purposes.

The issues were joined upon the complaint and the answer of Sorrentino in two paragraphs, the first para-

graph being an answer of general denial and the second paragraph an answer specially pleading the change of character of the Town of Irvington since its incorporation. To this second paragraph of answer, the plaintiffs filed their reply of general denial which closed the issues.

The court, after hearing the case, rendered judgment against the appellant, restraining and enjoining him from selling, or suffering to be sold, any intoxicating beverages, except for sacramental, medicinal or mechanical purposes, on certain described real estate. Thereafter, the appellant filed his motion to modify the judgment, which motion was overruled. The appellant then filed his motion for a new trial. This motion was also overruled by the court. The overruling of these two motions are the only errors relied on for reversal.

The specifications of the motion for new trial which are not waived are as follows:

1. The decision of the court is not sustained by sufficient evidence.

2. The decision of the court is contrary to law.

In 1870 Jacob Julian and Sylvester Johnson platted what is called the original town of Irvington and inserted certain covenants which are as follows:

"As indicating our purpose to exclude from the town everything vicious or offensive and as a means of insuring this result, we shall incorporate in the deeds we may make for the lots we may sell the following provisions, viz: The grantee accepts this deed from the grantors with the express agreement that he, his heirs and assigns will not erect or maintain or suffer to be erected or maintained on the real estate herein conveyed, any distillery, brewery, soap factory, pork or slaughter house or any other establishment offensive to the people and that he will not erect or maintain or suffer to be erected or maintained on said premises any stable,

hog pen, privy or other offensive building, stall or shed within one hundred feet of any avenue in said town and that he will not sell or suffer anyone to sell on said premises any intoxicating beverages except for sacramental, medicinal, or mechanical purposes strictly. And he accepts this deed on the further agreement that the right to compel an enforcement of these conditions rest not only in the grantors, their heirs and assigns but in all the property holders and inhabitants of said town. And we hereby adopt these conditions for our own guidance and government, and stipulate with each and every grantee from us and with the property holders generally in said town that we will stand strictly by the same as to all the real estate we may continue to own in said town."

They then conveyed Lot 36 in the Town of Irvington to Daniel Hough by warranty deed. This deed contained certain restrictive clauses in the following language:

"The grantee accepts this deed from the grantor with the express agreement that he, his heirs and assigns will not erect or maintain or suffer to be erected or maintained on the real estate herein conveyed any distillery, brewery, soap factory, pork or slaughter house, or any other establishment offensive to the people; and that he will not erect or maintain or suffer to be erected or maintained on said premises any stable, hog pen, privy or other offensive building, stall or shed within one hundred feet of any avenue in said town; and that he will not sell or suffer anyone to sell on said premises any intoxicating beverages, except for sacramental, medicinal or mechanical purposes strictly. And he accepts the deed on the further agreement that the right to compel an enforcement of their conditions rests not only in the grantors, their heirs and assigns, but in all the property holders and inhabitants of said town.

"These conditions to apply to the grantors as to the lots they may retain just as they apply to the grantee."

The exhibits offered in evidence by the plaintiff in the lower court show that the deed from Julian and Johnson to Daniel Hough is in appellant's chain of title.

Appellant obtained title to his real estate in Irvington in 1922, from a Mrs. Thompson who had subdivided Lot 36 (one of the lots to which the restrictions pertain) into about 5 lots. There were no provisions in appellant's deed from Mrs. Thompson restricting the use of the premises. Shortly after appellant purchased said real estate, he built store rooms on the front of the lot. In one of these rooms appellant operates a soda fountain and a restaurant and sells beer and wine. He procured his license to sell intoxicating liquors in 1933, after the repeal of prohibition. One of the witnesses, Lou A. Robertson, testified that there was a hearing at the time appellant was attempting to obtain a permit to sell intoxicating liquors on his premises, and that at this hearing 25 or 30 property owners in Irvington (among which were some of the appellees in this case) testified in opposition to the petition of Sorrentino for his license.

The evidence also shows that a part of appellant's premises, known as 5533 East Washington Street, is leased to one Fred Kline who operates a package liquor store; that another part of the premises is rented for a barber shop, and that Sorrentino and his family live on said premises.

In the judgment in this case, the property involved is described by metes and bounds and includes that part of appellant's premises known as 5533 East Washington Street. Appellant contends that the overruling of his motion to modify the judgment was error because the complaint did not describe 5533 East Washington Street and did not ask that any re-

striction be enforced against that portion of appellant's property.

In the complaint the property was described as "Part of Lot One (1) in Thompson's Subdivision of Lot Thirty-six (36) in the original Town of Irvington, otherwise known as 5529-5531 East Washington Street, Indianapolis, Indiana." During the trial in the lower court, the appellees (plaintiffs below) introduced in evidence several deeds describing the real estate by metes and bounds, as set forth in the judgment. The appellant testified concerning 5533 East Washington Street, which was the package liquor store operated by Fred Kline.

The court did not err in overruling the motion to modify the judgment. Assuming that that part of the complaint which stated "Part of Lot One (1) in Thompson's Subdivision of Lot Thirty-six (36) in the Original Town of Irvington" was not sufficient to include 5533 East Washington Street, on appeal the complaint will be deemed amended to conform to the proof, since it might have been so amended in the court below.

Section 2-1063, Burns' 1933, provides, "No variance between the allegations in a pleading and the proof is to be deemed material, unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits." No evidence was offered to show that appellant was misled nor is it contended upon appeal that appellant was misled to his prejudice. Section 2-1064, Burns' 1933, provides that when the variance is not material then the court may direct the fact to be found according to the evidence, or may order an immediate amendment. Since the complaint might have been amended in the court below to conform to the proof, it will be deemed amended on appeal. *London, etc., Ins. Co.* v. *Mason* (1929), 90 Ind.

App. 305, 168 N. E. 702; *Farmers Mutual Aid Assn.* v. *Yager* (1938), 104 Ind. App. 554, 12 N. E. (2d) 382.

Appellant next insists that the decision of the court is not sustained by sufficient evidence and is contrary to law.

As one of the grounds for this contention, appellant asserts that the injunction issued by the court is mandatory and therefore of such drastic nature that the evidence does not warrant the issuance of the mandate. The pertinent part of the judgment, which forms the basis for this contention of appellant is: "It is, therefore, hereby ordered, adjudged and decreed that the said defendant, Philip Sorrentino, is hereby restrained and enjoined from selling, or suffering to be sold, any intoxicating beverages, except for sacramental, medicinal or mechanical purposes strictly on" (here follows the description of the real estate).

A mandatory injunction is distinguished from a prohibitory injunction in 28 Am. Jur., p. 211, § 18, in the following language:

"If the thing complained of is a passive condition existing at the time without affirmative acts on the part of the defendant, it is obvious that affirmative action will have to be taken to remove or remedy the condition, and consequently, the injunction will be mandatory in nature. But if the thing complained of results from present and continuing affirmative acts, and the injunction merely orders the defendant to refrain from doing those acts, it will be prohibitory in character, since passiveness on his part will remedy the condition."

In the case at bar the injunction has the effect of requiring appellant to cease selling, or suffering to be

sold, intoxicating beverages other than for certain enumerated purposes. No affirmative acts on the part of the appellant are required. Mere passiveness on his part will remedy the condition. Under such circumstances the injunction is prohibitory and not mandatory. 28 Am. Jur., *supra; Morton* v. *Morton* (1905), 148 Cal. 142, 82 P. 664.

But if we were to concede that the injunction issued by the court in this cause, although prohibitive in form, is mandatory from the standpoint of changing the "status quo" of the parties, the mandate of the court imposes no hardship on the appellant such as to make the character of the writ issued of any special importance. The business rooms involved were erected during national prohibition and their construction is well adapted for mercantile uses other than places in which to dispense intoxicating beverages.

The next contention advanced by the appellant is that there has been such a change of conditions in and about the original Town of Irvington that it is impossible to enforce some of the restrictive covenants and inequitable to enforce the restriction as to the sale of intoxicating beverages as against him.

Irvington as originally platted contained approximately 304 acres and there were 109 lots shown in the plat. Many of these lots have been subdivided and in the purely residential section or sections there are not less than fifteen to twenty thousand inhabitants. Appellant's real estate has a frontage on East Washington Street of 60 feet, and upon this tract he erected the business rooms hereinbefore referred to. For some blocks to the east and to the west of appellant's rooms, East Washington Street has become a business center. Residences along this section were removed or torn down, and in their places business rooms have been

erected, which house grocery, drygoods, hardware, and drug stores. There is also a bank, moving picture theatres, a post office, filling stations, garages, ice cream parlors, and branch cleaning establishments. To the south of Washington Street and near a railroad, the International Harvester Company has in the course of construction a large plant and in the same neighborhood there is a machine shop. There are a few business places on side streets intersecting East Washington Street. The original Town of Irvington, with the exception of these business blocks, is still a residential district. All of the business district along East Washington Street is not within the original plat, and outside of said plat there are several taverns. There is evidence from which the court could find that Sorrentino was the first to open a tavern within the original Town of Irvington, but there is evidence that the drug stores sold package beer and liquor, and some of the grocery stores also sold beer in package lots. There was also evidence that the enforcement of the restriction of the sale of intoxicating beverages against appellant would depreciate his property twelve thousand dollars. It does not appear that there are any offensive establishments, enumerated in this plat or in the first deed, such as breweries, distilleries, soap factories or slaughter houses. However, in the subdivision of the residential lots, outside toilets and old stables were thrown closer than one hundred feet to streets. This we think is a fair resume of the change of conditions brought about since said town was platted.

It would appear from the restrictions imposed by the persons laying out the Town of Irvington, that it was contemplated that a business district would be developed, and that the restrictions were directed not only to the prohibition of specific commerce

but to the prohibition of anything vicious or offensive. It would seem unreasonable, therefore, to conclude that because a certain section of the original town, once residential, has been converted into a business district that such conversion would require the abandonment of all of the restrictions. Certain establishments, such as a public garage, might be considered offensive, but required because of a change in the method of transportation. This situation, however, would not alone establish the right to erect a public garage, if within the restrictions, in a purely residential section.

The restriction against the sale of intoxicating beverages was placed in the original grant for the benefit of all the people who own lots within the restricted area. It was calculated as a benefit to the public health and morals of the community, and one owning property in any part of the area protected by said restriction has such a beneficial interest arising out of and because of said restriction to enjoin any violation thereof.

This court in the case of *Bachman* v. *Colpaert Realty Corp.* (1936), 101 Ind. App. 306, 319, 194 N. E. 783, approved the following language:

" 'No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted (that) the changes must be so radical as practically to destroy the essential objects and purposes of the agreement. . . .' "

It is our opinion that there has been no such change in conditions that establishes the right of appellant to ignore and violate the restrictive covenant in question.

It is also claimed that the appellant acted in good faith when he applied for and secured his license to

dispense beer and wine, and therefore, the element of good faith should have serious consideration in determining whether the injunction should be upheld, especially when, by the decree of the court, his property suffers a loss in value and when it does not appear that the complainants are harmed or injured. The appellant has lived at his place of business since 1922. He testified that at the time he constructed his business rooms he never expected to sell intoxicants. As hereinbefore stated there were many protestants at his hearing for a license, and though he denied actual knowledge of the restriction until within two or three years before this action was filed, he continued to violate the covenant after he learned of it. Upon all the facts, the court could infer that appellant knew or should have known of the restriction involved. However, the restrictive covenant was in his chain of title. It was a covenant running with the land and he was bound by it whether he had actual knowledge of it or not. *Bauby* v. *Krasow* (1927), 107 Conn. 109, 139 A. 508.

The damages to appellees in a case of this character cannot be measured in dollars and cents; for this reason, the jurisdiction of a court of equity is properly invoked to protect the beneficial interest which is secured to them through the restrictive covenant here involved. Therefore it cannot be said that the appellees are not harmed or injured by the violation of the agreement of appellant not to sell or suffer to be sold intoxicating beverages on the premises owned by him.

The annexation of the territory within the original Town of Irvington and the adoption of a zoning ordi-

nance covering the real estate subject to the restrictive covenants do not affect the validity of the covenant in question. *Dolan* v. *Brown* (1930), 338 Ill. 412, 170 N. E. 425; *Ludgate* v. *Sommerville* (1927), 121 Ore. 643, 256 P. 1043, 54 A. L. R. 837.

Finally, it is contended that the complainants were guilty of laches and by acquiescence lost their right to enforce the restriction imposed on appellant. Whether the right to equitable relief is affected by acquiescence depends upon the circumstances of each case. *Jackson* v. *Stevenson* (1892), 156 Mass. 496, 31 N. E. 691. The record discloses that an action involving the same issue as here involved had been brought prior to this action by substantially the same group of property owners that instituted the suit against appellant. That case had been pending for some time when the sale of intoxicants was discontinued and the case dismissed. Shortly thereafter this suit against Sorrentino was commenced. We are again reminded that there were many citizens who protested the issuance of a license to the appellant. The resistance of the injunction is proof that Sorrentino must have benefited by any delay in bringing this action, and if the delay caused him to suffer no injuries he is not in a position to claim that the complainants by such delay lost their equitable right to maintain this suit.

The decision in our opinion is sustained by the evidence and is not contrary to law.

Judgment affirmed.

NOTE.—Reported in 39 N. E. (2d) 473.