WISCHMEYER, ET AL. *v.* FINCH, ET AL.

[No. 28,958. Filed September 8, 1952. Rehearing denied November 13, 1952.]

*Frank Seidensticker*, of Indianapolis; *Melville E. Watson and Waldo C. Ging*, both of Greenfield, for appellants.

*Paul Y. Davis* and *John H. Baldwin*, both of Indianapolis and *Arthur C. Van Duyn*, of Greenfield, for appellees.

BOBBITT, J.—Appellants bring this suit in equity to enjoin the appellees from continuing alleged violations of certain restrictions contained in the plat of Briarwood Amended, being a subdivision of Briarwood, an addition to the city of Indianapolis.

The determination of two questions here presented will decide the material issues involved. (1) Can the owner of all the land in a subdivision, after a plat

thereof containing building and property line restrictions has been approved by the Board of Public Works and recorded in the manner provided by statute, modify, change or eliminate such restrictions so as to relieve the lots described in such deed and the purchaser thereof from the provisions of such restrictions, by the execution of a deed to the first purchaser which makes no reference to such restrictions? and (2) are appellants barred from obtaining equitable relief because of laches or because they are also violating said restrictions?

We shall consider these questions in the order named.

*First:* The factual situation relating to the first question is: On November 5, 1935, State National Securities Corporation, being the owner of all the lots in said subdivision, conveyed lots 6, 7, and 8 therein to the Peoples State Bank without any reference in the deed to said restrictions, but referred to the plat only as a means of describing the land conveyed. On June 25, 1938 Peoples State Bank conveyed said lots to Raymond D. Needler and Helen B. Needler, husband and wife, and on October 23, 1940 they executed to appellees herein a lease with option to purchase said lots 6, 7, and 8. By virtue of this lease appellees took possession of said lots and immediately thereafter began using them for the display of trailers for sale, and as a trailer camp wherein they rented space for the parking of occupied trailers for an indefinite period of time and without regard to the building restrictions set out in the plat. On June 25, 1941 appellants purchased from the State National Securities Corporation all the remaining lots in Briarwood Amended subdivision. On August 15, 1942 appellees exercised their option to purchase said lots 6, 7, and 8 and they were at that time conveyed to them (appellees) with full knowledge of the restrictions contained in the plat.

The deed to appellees contains the following provision:

"Subject to all easements and restrictions and conditions contained in the Plat of said Briarwood Amended, an Addition to the City of Indianapolis, and prior deeds conveying said real estate; also subject to suit pending in Room 2 of Superior Court of Marion County, Indiana, entitled Louis H. Wischmeyer, et al. v. Raymond D. Needler, et al. and numbered B-16652."

Appellees contend that the mere platting of real estate into lots with restrictions as to their future use creates no servitude that will survive a conveyance by the platter, while still the owner of all the lots platted, which conveyance does not specifically bind the grantee to observe the restrictions, but on the contrary warrants a fee simple title free from all encumbrances. In other words, that the common owner may waive the restrictions provided in the recorded plat in the first sale of lots simply by omitting any reference to said restrictions in the deed to the first purchaser.

The general rule is that so long as the owner of land on which building restrictions have been established continues to own the entire tract, he may modify the restrictions in any manner he sees fit. This is true notwithstanding he has filed a plat containing the restrictions. 14 Am. Jur., Covenants, Conditions and Restrictions, §291, p. 642.

When a sale of a lot is made as designated on the plat, it operates as a dedication of all the streets and alleys marked on such plat. *Hall* v. *Breyfogle* (1904), 162 Ind. 494, 70 N. E. 883; *The City of Indianapolis* v. *Kingsbury et al.* (1885), 101 Ind. 200, 51 Am. Rep. 749; *Shanklin* v. *The City of Evansville* (1876), 55 Ind. 240;

*Cox* v. *The Louisville, etc., R. R. Co.* (1874), 48 Ind. 178; *The City of Logansport* v. *Dunn* (1856), 8 Ind. 378.

Plats of subdivisions are by statute required to be recorded, §48-801, Burns' 1950 Replacement, Acts 1905, ch. 129, §246, p. 219; and approved by the board of public works, §48-802, Burns' 1950 Replacement, Acts 1905, ch. 129, §247, p. 219. Plat books kept in the office of the county recorder are public records, *Miller* v. *The City of Indianapolis et al.* (1890), 123 Ind. 196, 24 N. E. 228; and the recording of a plat of a subdivision is notice to the world of the dedication of streets and alleys and of the restrictive covenants therein contained. *Backer* v. *Pyne et al.* (1892), 130 Ind. 288, 30 N. E. 21, 30 Am. St. Rep. 231; *Keesling et al* v. *Doyle* (1893), 8 Ind. App. 43, 35 N. E. 126; *Spencer Stone Co.* v. *Sedwick* (1915), 58 Ind. App. 64, 105 N. E. 525.

When State National Securities Corporation platted Briarwood Amended and had the plat approved by the city plan commission, board of public works and city engineer and recorded as provided by statute, this was notice to all prospective purchasers of the restrictions contained in the plat. *Backer* v. *Pyne et al., supra; Keesling et al.* v. *Doyle, supra; Spencer Stone Co.* v. *Sedwick, supra.*

The legislature has by statute provided a method for the vacation of plats *"without the corporate limits of any city or town."* (Our italics.)

Acts of 1907, ch. 279, §1, p. 617, §48-901, Burns' 1950 Replacement, provides:

"Any plat of lands *without* the corporate limits of any city or town, or any part thereof, may be vacated by the owner or owners of said entire plat at any time *before the sale of any lot therein,* by a written instrument declaring the same to be va-

cated, executed, acknowledged and recorded in like manner as deeds of lands; which declarations, having been so recorded, shall operate to destroy the force and effect of such plat or the part thereof declared to be vacated, and to divest all public rights in the streets, alleys and other public grounds therein laid out or described in such plat or the part thereof so declared to be vacated. If any lot or lots or parts of lots located therein shall have been sold and conveyed, the plat thereof may be vacated in whole or in part in the same manner as in this section provided, if the owners of all lots and parts therein join in the execution of such writing." (Our italics.)

We are not unmindful of §12 of said ch. 279, §48-912, Burns' 1950 Replacement, which provides: "This act shall not apply to cities of the first class."

The title of said act is as follows: "An act concerning the vacation of plats of lands or any part thereof and for the disannexation of territory from the corporate limits of cities and towns."

Said act applies to plats of lots outside the corporate limits as well as those within the city. It also provides for the vacation of streets and alleys and for the disannexation of lands (§§3 to 12). Different procedures are provided for the vacation of plats outside the corporate limits and for those inside the city.

The provision of §12 of said act, which excludes cities of the first class, manifestly applies only to those sections of the act which apply wholly to cities and towns. It obviously does not apply to §1 which has to do only with lands "without the corporate limits of any city or town."

We are concerned in the case at bar with a "modification" and not the "vacation" of a plat of land without the corporate limits of a city. However, the only dif-

ference between vacating and modifying a plan is in the degree or extent of the alteration. A plat might, by successive modifications, be entirely vacated. The rule which applies to a vacation applies with equal force to a modification.

It follows that if the owner of an entire plat of land desires to modify such plat before the sale of any lot therein, he must do so by a written instrument declaring the modifications, and such instrument must be executed, acknowledged and recorded in like manner as deeds of land. If any lot, or part of a lot, located in such plat shall have been sold and conveyed, no modification thereof can be made unless the owners of all the lots and parts therein "join in the execution of such writing."

The owner of all the lands in a recorded plat cannot modify or vacate the same, except in the manner provided by said §48-901, *supra*.

There are two methods of creating restrictions upon the use of property. One is by express covenants contained in the deed, and the other is by a recorded plat of the subdivision and a purchaser buys lots in the subdivision with reference to the plat. *Davis* v. *Huguenor* (1951), 408 Ill. 468, 97 N. E. 2d 295, 297, 23 A. L. R. 2d 931; *Loomis* v. *Collins* (1916), 272 Ill. 221, 111 N. E. 999, 1002.

This court has held that when lands are conveyed according to an official plat of their survey, the plat with its notes becomes as much a part of the grant or deed by which they are conveyed, and controls the same as if they were inserted in the deed or grant. *Gary Land Co.* v. *Griesel* (1913), 179 Ind. 204, 100 N. E. 673. See also: *Menstell* v. *Johnson* (1927), 125 Or. 150, 262 Pac. 853, 266 Pac. 891, 57 A. L. R. 311.

We affirm this rule.

The lots here in question were conveyed according to the official plat of Briarwood Amended, and the restrictive agreement contained therein became a part of the deed by which said lots 6, 7, and 8 were conveyed to Peoples State Bank the same as if they had been inserted in it. The sale of said lots to Peoples State Bank— the first purchaser—served as a dedication of the streets and of the utility strips, and it could not accept the benefits of the survey of the plat, and the street and utility strips, without accepting whatever burden the restrictions might impose.

When lots or parts thereof are sold with reference to a recorded plat other rights intervene, and any restrictions contained in the plat become binding upon the purchasers. *The City of Logansport* v. *Dunn* (1856), 8 Ind. 378, 383, *supra.*

The rule establishing appellants' rights herein is ably stated in 7 Thompson on Real Property, 4th ed., §3606, p. 90, as follows:

> "The right of one owner of a lot to enforce restrictions upon other lots rests upon the ground that the restrictions were for the benefit of all the lots subject to the same restrictions."

This right is not abrogated nor is there any modification of such restrictions by the failure to mention them in the instrument of conveyance from a common owner to any person who may acquire a lot or lots after the plat has been recorded. *Bachman* v. *Colpaert Realty Corp.* (1935), 101 Ind. App. 306, 318, 319, 194 N. E. 783. (Transfer denied) Cf: *Sorrentino* v. *Cunningham* (1942), 111 Ind. App. 212, 39 N. E. 2d 473; *Schwartz* v. *Holycross* (1925), 83 Ind. App. 658, 149 N. E. 699;

*Housing Authority of Gallatin County* v. *Church of God* (1948), 401 Ill. 100, 81 N. E. 2d 500.

*Second:* Since we have determined that appellees are bound by the restrictions of the plat, we must now consider whether appellants are entitled to enforce the provisions of such restrictions.

The rule here applicable is ably stated in *Southwest Petroleum Co.* v. *Logan* (1937), 180 Okl. 477, 71 P. 2d 759, 762:

> "It has long been an established principle that an agreement restricting the use of land in a certain tract, imposed thereon by a common grantor under a general improvement plan, intended for the mutual benefit of all grantees therein, may be enforced in equity by any subsequent grantee in such tract, who purchased with reliance on the general plan, against any other subsequent grantee taking with notice of the restrictions. [Citing authorities] In section 3407, [§3614, 4th ed.] Thompson on Real Property, it is stated: 'One who takes land with notice of a restrictive agreement affecting it can not equitably refuse to perform it, though the agreement may not be a covenant which runs with the land, or creates a technical qualification of the estate conveyed.'
>
> "The restrictions need not rise to the dignity of a grant or reservation, but create an equitable right in the nature of an easement, enforceable in equity against all persons taking with notice, even if it rests on no broader principle than that equity will enforce a proper contract concerning land, against all persons taking with notice of it. Codman v. Bradley, 201 Mass. 361, 87 N. E. 591, 593."

See also: *Menstell* v. *Johnson* (1927), 125 Or. 150, 262 Pac. 853, 266 Pac. 891, 57 A. L. R. 311, *supra.*

The question of whether there is a general improvement plan is one to be determined from all the circumstances of the case. The plan outlined in the plat of

Briarwood Amended was obviously designed to make said subdivision more attractive and to restrict the buildings to residential properties, to provide streets, utility strips, property lines and certain restrictions upon the type of buildings which might be constructed within the subdivision. We think these circumstances sufficient to constitute a general improvement plan for the development of said subdivision.

The granting or refusing of relief in the violation of a building restriction is a matter within the discretion of the trial court and is to be governed by equitable principles. Injunctive relief will be denied where complainant has substantially violated the restrictions or has been guilty of laches, waiver, or acquiescence. 43 C. J. S., Injunctions, §87, p. 590.

Whether the right to equitable relief is affected by laches, waiver, or acquiescence depends upon the circumstances in each case. *Sorrentino* v. *Cunningham* (1942), 111 Ind. App. 212, 225, 39 N. E. 2d 473, *supra;* 43 C. J. S., Injunctions, §87, *supra.*

An examination of the record before us discloses the following:

The plat here in question was made and recorded in 1935. Appellees took possession of lots 6, 7, and 8 on October 23, 1940 by means of a lease with option to purchase. On June 25, 1941, appellants purchased the remaining unimproved lots in said subdivision with full knowledge of the trailer operation on said lots 6, 7, and 8. In August of 1941 appellants instituted a suit to enjoin appellees from further operation of the trailer camp and sales of trailers. This suit was dismissed in July of 1943 for want of prosecution. In May, 1947, appellants filed this suit upon identical charges contained in the suit which was dismissed in 1943. We

must assume that from July, 1943 to May, 1947, appellants acquiesced in appellees' use of said lots as there is no evidence to the contrary except the filing of the first suit. During this period appellees expended $4,500 improving their property.

Appellants (complainants) after filing their first suit in 1941 delayed action thereon for a period of approximately two years, when it was dismissed for want of prosecution. During this period of time they acquiesced in the violation of said building restrictions by appellees. Appellants then delayed and failed to take any further action for a period of approximately four years, during which time they further acquiesced in such alleged violation and appellees expended $4,500 in the improvement of their property.

The rule in Indiana as to laches is: "Laches implies something more than mere lapse of time; it requires some actual or presumable change of circumstances, rendering it inequitable to grant relief." *Hegarty* v. *Curtis* (1950), 121 Ind. App. 74, 95 N. E. 2d 706, 713.

Considering the lapse of time, together with the change of circumstances resulting from the additional improvement to appellees' property during the period of almost six years, we believe the facts here sufficient to constitute laches within the above rule. *Grantham Realty Corp.* v. *Bowers, Jr., Tr.* (1939), 215 Ind. 672, 22 N. E. 2d 832; *Ryason* v. *Dunten* (1905), 164 Ind. 85, 73 N. E. 74; *Smith* v. *Schweigerer* (1891), 129 Ind. 363, 28 N. E. 696; See also: *Gage* v. *Schavoir* (1924), 100 Conn. 652, 124 A. 535, 539; *Gillingham* v. *Timmins*, Tex. Civ. App. (1937), 104 S. W. 2d 115; *N. P. Dodge Corporation* v. *Calderwood* (1940), 151 Kan. 978, 101 P. 2d 883.

While the building restrictions contained in the plat of Briarwood Amended are binding upon appellees and affect the lots owned by them the same as if they had been recited in the deed from State National Securities Corporation to Peoples State Bank, appellants are not in position to enforce said restrictions against appellees because they are guilty of laches. Having determined that appellants were guilty of laches, it is not necessary to decide whether they were also violating said restrictions.

Cause remanded with instructions to the trial court to enter a finding and judgment in accordance with the views herein expressed and such judgment, when so rendered, will be affirmed; and the clerk of this court is ordered to transmit a copy of this mandate to the clerk of the Hancock Circuit Court forthwith.

NOTE.—Reported in 107 N. E. 2d 661.