Garland G. OAKES, III and Paulette
Y. Oakes, Appellants–Plaintiffs–
Counter–Defendants,

v.

Ronald and Roberta HATTABAUGH,
Appellees–Defendants,

Roberta Kent, Appellee–
Counter–Plaintiff,

Big Ten Development Company, an
Indiana General Partnership, Appellee–
Intervening Plaintiff.

No. 10A05–9307–CV–263.[1]

Court of Appeals of Indiana,
First District.

March 31, 1994.

Rehearing Denied June 29, 1994.

1. This case was diverted to this office on Febru-        ary 16, 1994, by direction of the Chief Judge.

John R. Vissing, Jeffersonville, for appellants.

John W. Doehrman, Jeffersonville, for Big Ten.

James A. Lang, Jeffersonville, for Roberta Kent.

BAKER, Judge.

This action arose out of a dispute over an easement for a common driveway. Appellant-plaintiffs Paulette and Garland Oakes, III, sought reimbursement of costs to maintain the common driveway from appellee-defendant Roberta Kent. Kent filed a counterclaim seeking an injunction for the Oakes' violation of restrictive covenants. Appellee-intervenor Big Ten Development Co. intervened claiming an interest in the same easement.

### FACTS

In 1978, Big Ten purchased over 375 acres in Clark County from Utica Farms. At that time, Walter and Hazel Bales and Alvord and Zelma Pitts jointly owned the real estate adjacent to Big Ten. Big Ten's deed did not contain any easement provision concerning the Bales and Pitts' property. In 1981, the Bales and Pitts divided their property into several lots and sold them at a public auction. Kent bought Lot 19, and Douglas and Myra Jo Myers, the Oakes' grantors, bought Lot 20, which was approximately 7.6 acres and in the shape of a flag. *See* Diagram. The Myers' and Kent's deeds identified a fifty-foot wide easement for ingress and egress across the Myers' property to be maintained on a pro-rata basis among its users. The easement ran along the northwest boundary from the Utica–Sellersburg Road to the Big Ten property, or in the context of the diagram, along the "flagpole." Kent's property was landlocked and situated east of a portion of the easement. She regularly used the driveway easement for ingress and egress to her property. Big Ten's property has remained undeveloped and Big Ten never attempted to use the easement although the Bales and Pitts executed a document in October 1991, purportedly granting Big Ten an easement on Lot 20.

Both the Myers' and Kent's deeds also contained restrictive covenants enforceable

for twenty-five years. The restrictive covenants prohibited nonresidential uses and buildings, noxious or offensive activities, and signs larger than one square foot.

In June 1988, the Oakes purchased the Myers' property. Similar to the deeds of the Myers and Kent, the Oakes' deed set forth the easement upon the land, but did not identify the dominant tenement or its owner. The Oakes' deed did not list any restrictive covenants, but noted that the conveyance was made subject to all easements, rights-of-way, restrictions, and agreements of record. In late 1988, the Oakes built a barn, began raising farm animals, and erected a sign at the entrance of the driveway that read "Oakshire Estate and Stables." The Oakes subsequently improved the easement driveway with gravel for $5,000. The Oakes requested Kent pay $2,500 of the expense, but she refused.

On January 11, 1991, the Oakes filed suit against Kent for reimbursement of one-half of the cost to improve the driveway on the easement.[2] Kent filed a counterclaim seeking an injunction for the Oakes' violation of the restrictive covenants by building a barn and fence on the easement, keeping horses and donkeys, and erecting the sign. Big Ten intervened asserting a perpetual easement for ingress and egress across the Oakes' land.

Upon entering specific findings of fact and conclusions of law at the Oakes' request, the trial court ordered Kent to reimburse the Oakes $2,500. It also granted Kent's injunctive counterclaim and ordered the Oakes to remove their barn, farm animals, fence, and sign. Lastly, the trial court granted Big Ten a perpetual easement on the Oakes' property. The Oakes challenge the judgment on Kent's counterclaim and Big Ten's third-party claim.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Pursuant to the Oakes' request under Ind.Trial Rule 52, the trial court entered specific findings of fact and conclusions and law. When the trial court makes requested findings and conclusions, we must determine whether the findings are sufficient to support the judgment. *Vanderburgh County v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, 665, *trans. denied.* In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only if it is clearly erroneous. *Id.* The Oakes do not attack the findings of fact but claim the findings do not support the conclusions.

### II. Easement

■ The Oakes contend the easement did not inure to Big Ten's benefit because the deeds do not name Big Ten's property as a dominant tenement. All three deeds, the Myers', Kent's, and the Oakes', contain similar language:

> Subject to an easement for ingress and egress described as follows: [legal description of fifty-foot strip on Lot 20]. The fifty foot right-of-way shall be maintained on a pro-rata basis among the users thereof. The county assumes no responsibility for paving or maintaining such right-of-way.

Record at 268, 290, 490. An instrument creating an express easement should describe with reasonable certainty the easement created and the dominant and servient tenements. *Lennertz v. Yohn* (1948), 118 Ind. App. 443, 79 N.E.2d 414, *trans. denied; Ross v. Valentine* (1945), 116 Ind.App. 354, 63 N.E.2d 691, 695. Here, the deeds identified the easement's precise location on the Oakes' property. However, the deeds failed to name any dominant tenement or specify that the easement was created in favor of any particular landowner.

In *Lennertz,* certain landowners, Carlson and the Rumbaughs, entered into the following agreement: "we hereby enter into an agreement between [Carlson] and [the Rumbaughs] the right to use the present drive between properties of same for driveway purposes for ninety-nine years for the sum of $10.00 and further agree to help maintain upkeep of driveway." *Lennertz,* at 415. The

2. Kent married Ronald Hattabaugh but kept her maiden name. Because Ronald did not acquire any interest in Kent's property, the Oakes' action against Ronald was dismissed on the merits.

*Lennertz* court held that the agreement was insufficient to create an easement as it failed to describe the dominant or servient tenements, the location of the drive, or the location of the properties affected. *Id.* at 417.

■ Unlike the *Lennertz* instrument, the deeds here describe the location of the easement, and thereby inherently identify the Oakes' property as the servient tenement since the easement was located on the Oakes' property. However, the deeds failed to indicate with reasonable certainty any dominant tenement. *See e.g. Chase v. Nelson* (1987), Ind.App., 507 N.E.2d 640, 642 (adequate description of dominant and servient tenements to create easement); *Brademas v. Hartwig* (1977), 175 Ind.App. 4, 369 N.E.2d 954, 957. Big Ten urges us to review the circumstances existing in 1981 when the Myers' and Kent purchased their lots in order to determine the Bales and Pitts' intent, which Big Ten claims was to grant Big Ten an easement. We refuse Big Ten's invitation to look beyond the deeds because the terms are plain and unambiguous; no dominant tenements are identified. Furthermore, the intention of the original parties will not control the plain and unambiguous terms of the deed as against third persons. *Lennertz*, at 417. As in *Lennertz*, the language in the deeds here failed to create an easement in favor of Big Ten. We conclude that the trial court's conclusions are not supported by the findings; thus, we reverse the portion of the judgment which gave Big Ten a perpetual easement on the Oakes' property.[3]

### III. Restrictive Covenants

■ The Oakes contend that the restrictive covenants cannot be enforced because they did not run with the land. The Oakes deed does not contain any restrictive covenants; however, the deed states that the conveyance to the Oakes was subject to all applicable easements, rights-of-ways, restrictions and agreements of record. The Myers' deed within the Oakes' chain of title contains the restrictive covenants and are "restric-

tions of record" which therefore apply to the Oakes.

■ The Oakes maintain that the covenants are too ambiguous to show that they run with the land. Restrictive covenants run with the land if 1) the covenantors intended it to run, 2) the covenant touches and concerns the land, and 3) there is privity of estate between subsequent grantees of the original covenantor and covenantee. *Moseley v. Bishop* (1984), Ind.App., 470 N.E.2d 773, 776. The Oakes argue only that the first element is lacking.

■ The intent of the original covenantors must be determined from the specific language used and the circumstances existing at the time the covenants were adopted. *Id.* The Oakes admit that the language in the Myers' deed reciting a twenty-five-year duration for the restrictive covenants indicates an intention to bind later grantees, but they contend that the circumstances present at the time of the creation of the covenants in 1981 reflect that the original covenantors did not intend for the covenants to run with the land. The Oakes postulate that the Bales and Pitts were concerned only with auctioning the lots and not with the details of recording a plat or restrictive covenants. They further speculate that because the restrictive covenants were recorded in the deeds and not by separate instruments that such action demonstrate the Bales and Pitts intended the restrictive covenants to apply only to the original purchasers at the auction.

■ The Oakes' argument is meritless because restrictive covenants may be created by express language in a deed. *See Wischmeyer v. Finch* (1952), 231 Ind. 282, 107 N.E.2d 661, 664. The Bales and Pitts' inclusion of the restrictive covenants in the recorded deeds was sufficient to establish the covenants. The twenty-five-year duration further supports the conclusion that the covenantors' intent was that the restrictive covenants were to run with the land.

■ The Oakes next complain that the restrictive covenants should not be en-

---

**3.** Although this analysis appears to conflict with an easement in favor of Kent, the Oakes have never challenged Kent's use of the easement, and instead, seek contribution for her interest in the easement.

forced because of laches and acquiescence. *See Wischmeyer*, 107 N.E.2d at 665; *Hrisomalos v. Smith* (1992), Ind.App., 600 N.E.2d 1363, 1366. The granting or refusing of injunctive relief is a matter within the trial court's discretion. *Irwin R. Evens & Son v. Bd. of Indianapolis Airport Authority* (1992), Ind.App., 584 N.E.2d 576, 583–84. A mandatory or prohibitory injunction is an extraordinary equitable remedy which should be granted with caution. *Id.* The plaintiff has the burden of demonstrating certain and irreparable injury. *Id.* Injunctive relief will be denied where the complainant has been guilty of laches. *Wischmeyer*, 107 N.E.2d at 665.

Laches is comprised of 1) an inexcusable delay in asserting a right, 2) an implied waiver from a knowing acquiescence in existing conditions, and 3) prejudice to the adverse party. *LaPorte Production Credit Ass'n v. Kalwitz* (1991), Ind.App., 567 N.E.2d 1202, 1204, *trans. denied.* Laches implies something more than mere lapse of time; it requires some actual or presumable change of circumstances rendering relief inequitable. *Wischmeyer*, 107 N.E.2d at 666. The Oakes built their barn in the fall of 1988 so that they could board their horses which had been boarded elsewhere. In approximately October 1988, the Oakes improved the dirt driveway with gravel. The parties disputed whether Kent agreed to pay one-half of the driveway expense. Later, the Oakes sold their house and built a new one on Lot 20. Although Kent was not living on her property at the time the driveway was improved, she was aware of the Oakes' violations of the restrictive covenants at least as early as 1989, but she did not voice any complaints until February 1991 in her counterclaim. The Oakes bought their property in order to build a new home where they could raise their horses and other animals. They built the barn first and boarded their horses and donkeys there without objection from the neighbors. Subsequently, they built their home and bought an adjacent field. Kent permitted the violations for at least two years without objection. Kent's silence constitutes an implied acquiescence in the Oakes' actions. Her delay in seeking to enforce the restrictive covenants was prejudicial to the Oakes who built and established their home and purchased additional land after their horses, barn, sign, and fence had already been present without complaint. We find an injunction to remove these items would be inequitable due to laches; thus, we vacate the trial court's injunction.

Judgment affirmed in part and reversed in part.

NAJAM and RILEY, JJ., concur.