# FOR PUBLICATION

ATTORNEY FOR APPELLANTS,
Land Innovators Company, L.P.
and R.N. Thompson:

**WILLIAM T. ROSENBAUM**
Rosenbaum Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLANTS,
Trinity Homes, Inc. and Trinity Homes,
LLC d/b/a Beazer Homes:

**ANDREW J. DETHERAGE**
**WILLIAM A. HAHN**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**TERRENCE J. SORG**
Brooks Koch & Sorg
Indianapolis, Indiana

**NANA QUAY-SMITH**
**KARL L. MULVANEY**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana



**FILED**

Jul 30 2014, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

LAND INNOVATORS COMPANY, L.P., )
R.N. THOMPSON, TRINITY HOMES, INC. )
and TRINITY HOMES, LLC d/b/a BEAZER )
HOMES, )
)
    Appellants-Defendants, )
)
       vs. )    No.  29A05-1306-PL-308
)
MICHAEL L. BOGAN and )
MELODY A. BOGAN, )
)
    Appellees-Plaintiffs. )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-0508-PL-747

**July 30, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

Case Summary and Issues

This case centers on a newly constructed home purchased by Michael and Melody Bogan (collectively, "Bogan") in the Lake Stonebridge subdivision in Fishers. Since the home's construction in 1999, it has experienced two incidents of flooding in the lower level. In response to these instances of flooding, Bogan filed suit against the subdivision developer and its general partner, Land Innovators, L.P. and R.N. Thompson, respectively, (collectively, the "Developers") and against the homebuilder, Trinity Homes, LLC ("Trinity"). Bogan asserted a multitude of claims against the defendants, including breach of contract, negligence, negligence per se, constructive fraud, breach of covenants, breach of implied warranty of habitability, and abuse of process. The Developers also raised a cross-claim against Trinity seeking indemnification. On April 29, 2013, the trial court issued an order that: (1) awarded partial summary judgment to Bogan against Trinity on liability as to

2

claims of negligence, negligence per se, breach of contract, and breach of covenants; (2) awarded partial summary judgment to Bogan against Developers on liability as to the claim of breach of covenants; (3) found genuine issues of fact existed regarding Bogan's claims against Trinity of constructive fraud and breach of warranty of habitability; (4) found genuine issues of fact existed regarding Bogan's claims against the Developers of negligence, breach of warranty of habitability, and abuse of process; and (5) granted Trinity's motion for judgment on the pleadings against Developers' claim for indemnification. On May 31, 2013, the trial court issued another order granting Bogan's request that the home be demolished.

All three parties have raised issues for our consideration in this appeal. Trinity asks (1) whether the trial court erred in granting partial summary judgment on claims of negligence, negligence per se, breach of contract, and breach of covenants, and (2) whether the trial court erred in concluding Bogan was entitled to attorney fees on their breach of covenants claim. The Developers ask whether the trial court erred in granting summary judgment against them for breach of covenants. Additionally, both Trinity and the Developers challenge the trial court's determination that the Bogan home must be torn down. Bogan, as cross-appellant, raises two issues: (1) whether the trial court erred by denying summary judgment on Bogan's claim of constructive fraud against Trinity, and (2) whether the trial court erred by denying summary judgment on Bogan's claim of negligence against the Developers. Finding no error in the trial court's April 29, 2013 order on summary judgment and Trinity's motion for judgment on the pleadings, we affirm that order in all respects. However, we conclude the trial court's decision to enter an injunction for removal of the house without presentation of evidence or findings as to the requisite elements for an

3

injunction was improper, and we reverse and remand on that sole issue.

## Facts and Procedural History

The Lake Stonebridge subdivision is a residential subdivision located in Fishers, Indiana. The Developers purchased the land, obtained the required zoning, and prepared and recorded plats and covenants for the subdivision. The Developers also installed the streets, utilities, and water detention and drainage systems for the subdivision, and created a building pad on each lot for each new home. A majority of the lots on which homes were built in this subdivision are adjacent to Lake Stonebridge ("the lake").

The lake became a water detention facility that accommodated storm water from the subdivision and surrounding area. The Developers hired Evergreen Planners, Inc. to aid in designing the water detention facility and subdivision, and to assist in obtaining any necessary government approval. One critical aspect of Evergreen Planners' responsibilities included determining the base flood elevation (also known as the "100-year flood" elevation) for sections of the subdivision and establishing proposed lower level elevations for each individual plot in the subdivision. This was critical because the proximity of homes to the lake made them potentially susceptible to an increased risk of flooding. For the purpose of determining the lake's base flood elevation, the Developers hired Christopher B. Burke Engineering, Ltd. to conduct a hydrologic study. It was determined that the lake's base flood elevation was 786.6 feet.[1]

An important aspect of the development approval process included preparation of

---

[1] Bogan argues that the Developers erroneously calculated the lake's base flood elevation. The trial court determined that the lake's base flood elevation is a genuine issue of material fact.

4

detailed development plans for each section of the subdivision, which included lower level elevations for each house to be constructed. Such a plan was created with respect to Section 2B of the subdivision and will be referred to as the "Site Development Plan." A detailed development plan may contain various forms of information regarding the structures to be built, roads, topographical information, etc., and one must be submitted to and approved by the Town of Fishers in order to obtain an improvement permit. The Site Development Plan, which was approved by the Town of Fishers, provided for a lower level elevation of 789 feet for Section 2B—and specifically for Lot 72. This elevation was chosen, in part, pursuant to a Fishers ordinance dealing with the development of drainage facilities. Fishers Ordinance 110380 § 153.35 provided that "[a] drainage facility shall be provided to allow drainage of water run-off from all of the upstream drainage areas and from all areas within the proposed subdivision to a place adequate to receive such run-off." More specifically, the ordinance stated that a subdivision drainage facility must be "designed such that the low points of entry for residential . . . structures are two feet above and free from a 100-year flood." Id. at § 153.35(C)(4).

Trinity was contracted by the Developers to be the exclusive homebuilder in the subdivision and received a copy of the approved Site Development Plan. On May 1, 1998, Bogan and Trinity entered into a contract whereby Trinity agreed to build a lakefront home for Bogan on Lot 72 in Section 2B of the subdivision. Trinity was to build a one-story frame house with a walk-out lower level facing the lake. The home's standard design included steps between the home and garage, and Bogan inquired as to the possibility that those steps be removed in order to accommodate his limited mobility. In response, Trinity suggested

5

that the home's elevation be lowered to meet Bogan's request. The plot plans for the Bogan home reflected this change, and the final plot plans for the home—prepared by Trinity—called for a basement finished floor elevation of 788.04 feet.

Trinity submitted those final plot plans to the Fishers Department of Development as part of the process required to receive a building permit. Fishers then issued a building permit for the Bogan home. Trinity constructed the Bogan home in accordance with the plot plans submitted for approval by the Town of Fishers. At no time did Trinity seek approval from the Developers for the plot plans specific to the Bogan home, and the Developers did not require Trinity to make such a submission for approval.

On May 18, 1999, the home was completed, and Bogan acquired Lot 72 and the home from Trinity. Since that time, the home has experienced two instances of flooding in its lower level. On September 1, 2003, a rainstorm caused the lake to overflow and flood the Bogan home with seven inches of water. The home flooded a second time on February 28, 2011, and incurred one inch of water on that occasion.

Bogan filed suit against both Trinity and the Developers. As to Trinity, Bogan asserted claims of negligence, negligence per se, breach of contract, breach of warranty of habitability, constructive fraud, and breach of covenants. As to the Developers, Bogan asserted claims of negligence, breach of warranty of habitability, constructive fraud, abuse of process, and breach of covenants. The Developers filed a cross-claim seeking indemnification from Trinity. Bogan and the Developers each sought summary judgment as to all relevant claims, and Trinity filed for judgment on the pleadings against the Developers' cross-claim.

6

On April 29, 2013, the trial court addressed the parties' motions for summary judgment and Trinity's motion for judgment on the pleadings against the Developers' indemnification claim. As to Trinity, the trial court granted summary judgment to Bogan on liability for negligence, negligence per se, breach of contract, and breach of covenants, but the trial court found genuine issues of fact precluded summary judgment on claims of constructive fraud and breach of warranty of habitability. As to the Developers, the trial court granted summary judgment to Bogan on liability for breach of the covenants, but the trial court found genuine issues of fact precluded summary judgment on claims of negligence, breach of warranty of habitability, and abuse of process. The trial court also granted Trinity's motion for judgment on the pleadings.

On April 29, 2013, Bogan filed a Motion to Enforce the Covenants, requesting that the trial court impose an equitable remedy provided for under the covenants and remove the Bogan home from Lot 72. The trial court heard argument on that motion on May 10, 2013, and granted the motion. The trial court stayed that order pending appeal. This appeal followed. Additional facts will be provided as necessary.

Discussion and Decision

I.      Summary Judgment Standard of Review

When reviewing a trial court's entry of summary judgment, we apply the same standard as the trial court. Manley v. Sherer, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Our review is limited to those facts designated to the trial court. Meredith v. Pence, 984 N.E.2d 1213, 1218 (Ind.

7

2013). The appellant has the burden of demonstrating that summary judgment was erroneous. Amaya v. Brater, 981 N.E.2d 1235, 1239 (Ind. Ct. App. 2013), trans. denied.

II. Negligence, Negligence Per Se, and Breach of Contract Claims against Trinity

The trial court granted summary judgment in favor of Bogan on his claims of negligence, negligence per se, and breach of contract. Those rulings were based on a single rationale: Trinity's construction of the Bogan home with a lower level elevation below 789 feet as indicated on the Site Development Plan violated Fishers Ordinance 040892A. Trinity makes two arguments against the trial court's conclusion: (1) Trinity contends that the Town of Fishers' approval of Trinity's individualized plot plan for the Bogan home shows that Trinity did not violate Fishers ordinances and that this approval is an interpretation entitled to great weight; and (2) Trinity argues that the lower level elevation for Lot 72 on the Site Development Plan was a "recommendation," not a "required minimum" elevation.

Fishers Ordinance 040892A, section 5(I) states: "All development shall be in conformity with the approved detailed Development Plan." The "detailed Development Plan" referred to in this ordinance is the Site Development Plan. Bogan maintained, and the trial court agreed, that Trinity's act of building the Bogan home nearly one foot below the 789 feet elevation designated on the Site Development Plan was a violation of the ordinance quoted above.

First, Trinity contends that no ordinance violation occurred because the Fishers Department of Development approved Trinity's plot plan with a proposed lower level elevation of 788.04 feet. According to Trinity, Fishers Department of Development is charged with ensuring compliance with any governing ordinances and that Fishers' approval

8

of the plot plan and issuance of a building permit—after its prior approval of the Site Development Plan—amounts to a statement by Fishers that no ordinance was violated. Trinity cites Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n, 819 N.E.2d 55, 64 (Ind. 2004), which states that an agency's construction of its own ordinance is entitled to deference.

When applying statutes and ordinances, it is generally the rule that "[i]f a statute is clear and unambiguous on its face, no room exists for judicial construction." Siwinski v. Town of Ogden Dunes, 949 N.E.2d 825, 828 (Ind. 2011). The trial court found that Ordinance 040892A was unambiguous in its mandate that a structure must be built in conformity with the Site Development Plan, and Trinity points to no ambiguity in the language of the subsection at issue. Thus, there is no need for any interpretation by the Fishers Department of Development to which deference might be given. The ordinance states plainly enough that development must be in conformity with the Site Development Plan. Trinity built the Bogan home with a lower level elevation that did not conform to that plan, and therefore the ordinance was violated.

Second, Trinity argues that there is, at minimum, a genuine issue of material fact as to whether the lower level elevation for Lot 72 denoted on the Site Development Plan was a requirement or merely a recommendation that Trinity was free to follow or ignore in its discretion. In making this argument, Trinity relies primarily on statements made by Art Kaser, who prepared the Site Development Plan, that he believed the lower level elevations on the Site Development Plan were recommendations. This establishes a key question of fact, Trinity claims, because Bogan had relied on other statements by Kaser that the

elevations in question were required minimums. Kaser's understanding of the Site Development Plan as a "recommendation" contradicts the terms of Ordinance 040892A that state development "<u>shall</u> be in conformity" with the Site Development Plan. Kaser's description of the Site Development Plan's lower level elevations is not so much a question of material fact as it is his misunderstanding of the ordinance's requirement for conformity with the Site Development Plan. Trinity makes no argument that building the Bogan home approximately one foot lower than the approved Site Development Plan could be considered building "in conformity" with the designated elevation, and under the circumstances of this case, such an argument would be without merit.

In sum, we conclude Trinity built the Bogan home in violation of Fishers Ordinance 040892A.[2] Therefore, the trial court's entry of summary judgment against Trinity in Bogan's favor on claims of negligence, negligence per se, and breach of contract was proper.

### III. Breach of Covenants

The trial court's summary judgment order also concluded that both Trinity and the Developers were liable for breach of covenants. The Developers established three sets of covenants related to the Lake Stonebridge subdivision: (1) the 1995 Declaration of Covenants, which applied to the entire subdivision; (2) the 1996 Supplemental Declaration of Covenants; and (3) the 1998 Plat Covenants, which applied only to lots in Section 2B of the subdivision. Of particular relevance to this case are provisions of these covenants

---

[2] The parties addressed a number of other Fishers ordinances and Indiana regulations that Bogan contends Trinity also violated. We need not address those additional arguments, because a determination that Trinity violated Fishers Ordinance 040892A is sufficient to award summary judgment against Trinity for negligence, negligence per se, and breach of contract.

10

establishing an Architectural Design and Environmental Control Committee (the "Committee") and requiring that structures could not be erected in the subdivision without approval from the Committee. Specifically, the Declaration of Covenants provided:

> No structure or improvement . . . including . . . residences . . . shall be erected, placed or altered on any Lot in this Subdivision until the building plans, specifications and plot plan showing the location, materials, and appearance of the planned improvement have been submitted to and approved by as the [Committee], regarding conformity and harmony of external design, topography, and finished ground elevations.

Appellant's Appendix 268.[3] The Plat Covenants provided for similar, additional requirements: "The owners of all lots in Lake Stonebridge shall be required to submit a drainage plan, which shall include a minimum building pad elevation, to the Committee for its approval and which must also be submitted as part of the application for a building permit . . . ." Id. at 247. Trinity was the owner of Lot 72 prior to Bogan, and there is no dispute that Trinity and the Developers are bound by the covenants. The Bogan home was built without the approval called for in the Declaration of Covenants and Plat Covenants. Trinity did not submit plot plans for the Bogan home to either the Committee or the Developers, and the Developers did not enforce the approval process. The trial court concluded that these actions amounted to a breach of the covenants by both Trinity and the Developers. We agree.

## A. Standing

As an initial matter, both Trinity and the Developers assert that Bogan lacks standing to bring a claim for breach of covenants. The crux of the appellants' standing argument is that Bogan was not the owner of the home at the time of their alleged violations, and Bogan

---

[3] Appendix citations refer to the multi-volume joint appendix filed by Trinity and Bogan.

11

cannot enforce the covenants against a violation that occurred prior to his attainment of rights under the covenants. Bogan counters with a number of theories giving him standing, including his contractual interest in the property, privity of estate, and third-party beneficiary status. We find one particular argument of Bogan's to be persuasive and conclude, as did the trial court, that Bogan has standing to assert his breach of covenants claim.

Covenants are promises relating to real property that are created in conveyances or other instruments. Columbia Club, Inc. v. American Fletcher Realty Corp., 720 N.E.2d 411, 417 (Ind. Ct. App. 1999), trans. denied. Covenants may be express or implied and are a species of express contract. Id. Thus, real covenants, when written, are generally construed in the same manner as other written contracts, and we apply them according to their ordinary meaning when possible. See Keene v. Elkhart Cnty. Park and Recreation Bd., 740 N.E.2d 893, 896-87 (Ind. Ct. App. 2000).

Section 1.1 of the Declaration of Covenants states:

[The Developers] hereby expressly declare[] that the Real Estate shall be held, transferred and occupied subject to these Restrictions. The Owners of any Lot subject to these Restrictions, and all other Persons, (i) by acceptance of a deed from [the Developers], or its successors, conveying title thereto, or the execution of a contract for the purchase thereof, whether from [the Developers] or a subsequent Owner of such Lot . . . shall conclusively be deemed to have accepted such deed [and] executed such contract . . . subject to each Restriction and agreement herein contained. By acceptance of such deed, or execution of such contract . . . each Owner and all other Persons acknowledge the rights and powers of [the Developers], the Committee and of the [Homeowner's Association] with respect to these Restrictions, and also, for itself, its heirs, personal representatives, successors and assigns, covenant, agree and consent to and with [the Developers], the Committee, the [Homeowner's Association], and the Owners and Subsequent Owners of each of the Lots affected by these Restrictions to keep, observe, comply with and perform such Restrictions and agreement.

Appellant's App. at 259. Essentially, this section states that a person who executes a contract for purchase of a lot within the Lake Stonebridge subdivision is bound by the covenants. Bogan entered into such a contract with Trinity on May 1, 1998, before the time of the alleged covenants violations. Therefore, Bogan has standing to assert his claims.

## B. Violation

In addition to their contentions as to standing, both Trinity and the Developers put forth additional arguments stating that it is inappropriate to award summary judgment to Bogan on his breach of covenants claims. Trinity, for its part, argues there are genuine issues of fact as to whether it did in fact comply with the required approval process, and also contends that Bogan's claim against Trinity for breach of covenants is based on speculation and is unsupported by the record evidence. The Developers maintain they had no duty to require submission of or to approve individual plot plans, and they also assert that holding them liable in this case would create an undesirable and inefficient legal requirement for subdivision developers to oversee and approve the construction of individual homes.[4]

Trinity and the Developers each suggest that an oral agreement existed between the two whereby Trinity was only required to submit general plot plans for the various types of homes to be constructed in the subdivision and that the Developers did not require Trinity to submit specific plot plans for each individual home. The Developers further state in their

---

[4] The Developers argue they are entitled to summary judgment based on this court's decision in Corry v. Jahn, 972 N.E.2d 907 (Ind. Ct. App. 2012), trans. denied. The Developers' reliance on Corry is misplaced. That case involved a plaintiff homeowner who attempted to hold a developer liable for construction defects caused by the homebuilder. The court held that summary judgment in the developer's favor was appropriate under several theories, including breach of contract and negligence, because the developer was not a party to the construction contract and the plaintiff asserted no independent theory of liability. Id. By contrast, Bogan has brought claims against the Developers alleging fault independent of Trinity's construction errors.

13

appellant's brief that their agreement with Trinity meant that Trinity would only submit a specific plot plan for approval if a plan deviated from the approved general plans or the Site Development Plan.

The existence of such an oral agreement or informal "understanding" between Trinity and the Developers does not nullify the covenants' mandates. The covenants expressly state that parties to the covenants "may not waive or abandon these procedures for regulating and enforcing architectural design and environmental control without the prior written approval of all Owners and all Mortgagees . . . ." Appellant's App. at 269. Thus, any oral agreement existing between Trinity and the Developers did not relieve them of their duties under the covenants.

Trinity also contends Bogan's claim of breach of covenants is entirely speculative. Trinity states there is no record evidence establishing a causal connection between a breach of the covenants and damages to Bogan. To prove causation, a plaintiff must establish that "the harm would not have occurred but for the defendant's conduct." Mr. Bults, Inc. v. Orlando, 990 N.E.2d 1, 5 (Ind. Ct. App. 2013) (citation omitted), trans. denied. "Civil liability may not be predicated purely upon speculation." Id. (citation omitted). Bogan, however, points to deposition statements and interrogatory answers by Thompson declaring that the Developers would have denied a request by Trinity to build the home on Lot 72 below the minimum elevation on the Site Development Plan. It is undisputed that the lower level of the Bogan home would not have flooded on either of the aforementioned occasions if the lower level elevation been set at or above the 789 foot mark indicated on the Site Development Plan. Only two homes in Section 2B of the subdivision were built below the

14

Site Development Plan's lower level elevation (one of which was Bogan's home), and they are the only two to have experienced incidents of flooding. The evidence cited by Bogan is sufficient to establish a causal link between breach and damages.

Finally, the Developers argue that a ruling in Bogan's favor would create poor legal precedent requiring subdivision developers to oversee construction of individual homes and that this would be unsound policy. The Developers' arguments on this point are unavailing. The Developers' duty to approve individual plot plans in this case is not judge-made law that will be prescribed to every subdivision developer in Indiana; rather, the Developers' duty arises from the covenants that they themselves created and recorded. These covenants are specific to the Lake Stonebridge subdivision.[5]

## IV.     Bogan's Cross-Appeal Claims

In addition to issues raised by Trinity and the Developers, Bogan raises two issues on cross-appeal:  (1) whether the trial court erred by denying summary judgment on Bogan's claim of constructive fraud against Trinity, and (2) whether the trial court erred by denying summary judgment on Bogan's claim of negligence against the Developers. The trial court concluded there were genuine issues of fact precluding summary judgment on those claims, and Trinity and the Developers take that stance on appeal.

### A. Constructive Fraud

To prove constructive fraud, the following elements must be satisfied:

---

[5] The appellants contest the trial court's decision stating Bogan is entitled to attorney fees related to his claim for breach of covenants. The appellants do not dispute that the covenants provide for attorney fees to a prevailing party; rather, their arguments on this point are entirely based upon the premise that Bogan's underlying claim of breach of covenants should be unsuccessful. Because we affirm the trial court's summary judgment as to Bogan's claim of breach of covenants, we also affirm the trial court's determination as to attorney fees.

15

> (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

Rice v. Strunk, 670 N.E.2d 1280, 1284 (Ind. 1996). Bogan argues summary judgment is proper on this claim, maintaining that Trinity knew the Bogan home was improperly built in a floodplain (or Special Flood Hazard Area) and was subject to a substantial risk of flooding. Bogan further maintains Trinity fraudulently withheld that information from Bogan and provided Bogan with plot plans containing information regarding relevant elevations that was either deceptive or illegible.

Throughout much of his brief, Bogan writes as if it is a given that the home was built in a floodplain, which would require the home to be built at a flood protection grade elevation. However, the trial court concluded that there was a genuine issue of material fact as to whether the Bogan home was constructed in a floodplain, and Trinity cites to portions of the record indicating that this is indeed a disputed question of fact. Thus, summary judgment on that basis is not appropriate.

Trinity further claims that there are genuine issues of fact as to whether it fraudulently withheld information or made deceptive misrepresentations regarding the home's susceptibility to flooding. Trinity references an affidavit from John McKenzie, Trinity's president; in the affidavit, McKenzie averred he neither knew nor believed the Bogan home was susceptible to flooding at the time it was constructed. Trinity also notes evidence that Trinity employees directed Bogan to Kaser when Bogan raised questions about the lake.

16

Trinity asserts that this evidence creates an inference that Trinity was not making an effort to conceal information about the lake from Bogan. Moreover, Trinity asserts the alleged deceptive nature of the documents Bogan complains of is explained by an industry practice of placing "XXX" in place of numerical information that will be added at a later date and that any alleged "illegibility" is inherently a question of fact.

We are persuaded by Trinity's arguments that there exist genuine issues of material fact concerning Bogan's claim of constructive fraud. Therefore, we affirm the trial court's ruling on that issue.

## B. Negligence by the Developers

Bogan also claims the trial court erred by failing to grant summary judgment against the Developers for negligence. Bogan claims that the Developers were negligent by failing to properly calculate the lake's base flood elevation by using the High Ditch base flood elevation rather than the base flood elevation of Mud Creek. According to Bogan, the minimum elevation for Lot 72 should have been 791 feet, rather than 789 feet as stated on the Site Development Plan.

"Summary judgment is rarely appropriate in negligence cases because issues of causation and reasonable care are more appropriately left for determination by the trier of fact." Cincinnati Ins. Co. v. Davis, 860 N.E.2d 915, 922 (Ind. Ct. App. 2007). The Developers contend that there are genuine issues of fact, particularly with respect to causation and the correct base flood elevation of the lake, which was approved by the Indiana Department of Natural Resources. As to causation, the Developers argue that there is a genuine issue of material fact concerning whether the Developers' decision to set the

17

elevation at 789 rather than 791 was the cause of Bogan's damages. The Developers point to the following statement in Bogan's own complaint:

> The Home was built below the minimum lower [finished floor elevation] because Trinity breached their duties to Bogan. Had Trinity fulfilled its duty to Bogan and built the lower level of the Home at or above elevation 789.0 as designated on Developer's Site Development Plan, the Home would not have flooded on September 1, 2003 or on February 28, 2011.

Appellant's App. at 2389. As noted previously, only two homes built in Section 2B of the subdivision have experienced flooding—despite the lower level elevation of those homes all being based on the 789 feet elevation on the Site Development Plan—and both of those flooded homes were built with a lower level elevation below 789 feet. We agree with the Developers that there is a genuine issue of material fact as to whether the Developers were negligent in establishing the lake's base flood elevation.

## V. The Developers' Indemnification Claim

The Developers appeal the trial court's entry of judgment on the pleadings on the Developers' cross-claim against Trinity seeking indemnification. The trial court concluded the Developers were not entitled to indemnification based on any contractual provision or a right to indemnification under common law. A trial court's judgment on the pleadings is reviewed de novo. Woodruff v. Indiana Family and Soc. Servs. Admin., 964 N.E.2d 784, 789 (Ind. 2012), cert. denied, 133 S.Ct. 233 (2012).

In Indiana, a party may seek indemnification based on rights under statute, contract, or common law. INS Investigations Bureau, Inc. v. Lee, 784 N.E.2d 566, 575 (Ind. Ct. App. 2003), trans. denied. Trinity posits that the Developers are not entitled to indemnification under common law because they are liable to Bogan independent of any fault by Trinity. See

18

id. ("[A] party may bring an action for common law indemnification only if he is without fault."). Furthermore, Trinity states that neither the covenants nor any other contract between the Developers and Trinity entitles the Developers to indemnification.[6]

On reply, the Developers argue the Declaration of Covenants and Plat Covenants provide for indemnification. Specifically, the Developers refer to Section 17.4 of the Declaration of Covenants and Paragraph 34 of the Plat Covenants. Section 17.4 of the Declaration of Covenants provides:

> Costs and Attorney's Fees. In any proceeding arising because of failure of an Owner to make any payments required or to comply with any provision of this Declaration, the Articles of Incorporation, or the rules and regulations adopted pursuant thereto as each may be amended from time to time, [the Homeowner's Association] shall be entitled to recover its reasonable attorney's fees incurred in connection with such default or failure.

Appellant's App. at 277 (emphasis added). Paragraph 34 of the Plat Covenants states:

> If the parties hereto, or any of them, or their heirs or assigns, or any future transferee of the real estate or any part thereof, shall violate or attempt to violate any of these covenants, restrictions, provisions or conditions herein, the Association, the Committee (as to matters for which it has responsibility) or any other person owning any real property situated in this subdivision may prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenant, to prevent him or them from doing so, to recover damages or other charges for such violation, including attorney fees and costs, and/or require the removal of structures erected in violation thereof.

Id. at 253 (emphasis added). On their face, neither of these covenant provisions provides for indemnification. As a general matter, courts in Indiana disfavor indemnification clauses. Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols, 583 N.E2d 142, 145 (Ind. Ct. App. 1991). Accordingly, "indemnification clauses are strictly construed and the intent to

---

[6] Neither party suggests there is a statute that requires Trinity to indemnify the Developers in this case.

19

indemnify must be stated in clear and unequivocal terms." Fresh Cut, Inc. v. Fazli, 650 N.E.2d 1126, 1132 (Ind. 1995). The provisions quoted above—relating to recovery of attorney fees—do not grant the Developers, by clear and unequivocal terms, the right to be indemnified by Trinity in this situation. The Developers assert our holding in Ozinga Transp. Sys., Inc. v. Michigan Ash Sales, Inc., 676 N.E.2d 379 (Ind. Ct. App. 1997), trans. denied, which upheld an indemnity claim by a public utility against a contractor, mandates a favorable result for the Developers. The Developers are mistaken. The provisions at issue in Ozinga clearly required the contractor to "defend and indemnify" the public utility. Id. at 386-87. The contractual provisions relied on by the Developers here are clauses allowing attorney fees to a prevailing party enforcing the covenants and are dissimilar from the unequivocal indemnification clauses at issue in Ozinga.

### VI. Removal of Bogan Home from Lot 72

Finally, both Trinity and the Developers argue the trial court's May 31, 2013 order to tear down the Bogan home was improper. Upon Bogan's Motion to Enforce the Covenants, the trial court concluded that removal of a structure is a remedy provided for under the covenants, and after reference to the defendants' covenants violations, ordered that the home be torn down. The appellants claim this ruling was improper without an opportunity to present evidence and a determination that the elements for a permanent injunction are satisfied.

This court has previously found "[a] restrictive covenant constitutes a compensable interest in land. As such, the violation of restrictive covenants is necessarily subject to an economic assessment." Crossmann Communities, Inc. v. Dean, 767 N.E.2d 1035, 1042 (Ind.

20

Ct. App. 2002) (citation omitted). Nonetheless, an injunction may be appropriate where a restrictive covenant has been violated. Stewart v. Jackson, 635 N.E.2d 186, 189 (Ind. Ct. App. 1994), trans. denied. Injunctive relief is appropriate only when a legal remedy is inadequate. Bonewitz v. Parker, 912 N.E.2d 378, 384 (Ind. Ct. App. 2009), trans. denied. And "[b]efore granting injunctive relief, a court is required to consider alternate remedies available to the plaintiff." Id.

The appellants argue that the trial court was incorrect to order removal of the house without first hearing evidence concerning other potential remedies. They assert there are less wasteful alternatives to outright destruction of the home, including building a retention wall, removing the door to the home's lower level, or raising the entire home to an appropriate elevation. The Developers also maintain on reply that a legal remedy may be entirely adequate in this case. Whether the appellants' contentions on this point are correct is a matter we need not address. However, we agree that the appellants should have the opportunity to present evidence regarding other potential remedies and that the trial court must make a proper determination that injunctive relief is appropriate in this case. Because neither was done, we reverse the trial court's order that the home be removed.

## Conclusion

We conclude Bogan is entitled to judgment as a matter of law against Trinity on claims of negligence, negligence per se, breach of contract, and breach of covenants. We also conclude Bogan is entitled to judgment as a matter of law against the Developers for breach of covenants. We hold the trial court was correct to deny summary judgment on Bogan's claim of constructive fraud against Trinity and his claim of negligence against the

21

Developers.  We conclude the trial court's entry of judgment on the pleadings, denying the Developers claim for indemnification, was also correct.  Finally, we conclude the trial court's decision to enter an injunction for removal of the house without presentation of evidence or findings as the requisite elements for an injunction was improper.  Therefore, we affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and BRADFORD, J., concur.