FILED

Dec 20 2018, 5:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Edward W. Hearn
Johnson & Bell, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEES

Michael H. Michmerhuizen
William A. Ramsey
Patrick G. Murphy
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kosciusko County Community Fair, Inc., <br><br> *Appellant-Defendant,* <br><br> v. <br><br> Mary Clemens, Merle Conner, Judith Conner, and Chris Cummins, <br><br> *Appellees-Plaintiffs.* | December 20, 2018 <br><br> Court of Appeals Case No. 18A-PL-1319 <br><br> Appeal from the Kosciusko Circuit Court <br><br> The Honorable Michael W. Reed, Judge <br><br> Trial Court Cause No. 43C01-1805-PL-50 |

**Friedlander, Senior Judge.**

In May of 2018, the trial court preliminarily enjoined Kosciusko County Community Fair, Inc. ("the Fair") from conducting motorized races on its property. On appeal, the Fair contends that Mary Clemens, Merle Conner, Judith Conner, and Chris Cummins (collectively, "Homeowners") lacked standing to seek the requested injunctive relief. The Fair alternatively contends that the trial court erred in granting said relief. We affirm.

On June 27, 1989, James A. Cummins, Robert L. Fuson, Michael G. Hall, R. John Handel, George M. Haymond, J. Joseph Shellabarger, Fredric T. Stephens, Kenneth O. Truman, and H. Rex Wildman (collectively, "Original Homeowners") filed a complaint against the Fair's predecessor[1] after a dispute arose regarding the operation of an automobile racetrack located on the Fair's property. As part of the settlement of Original Homeowners' lawsuit, on July 18, 1990, the Fair executed a restrictive covenant limiting use of the racetrack. The restrictive covenant provided that after August 11, 1990, the Fair shall not use its property for motorized racing, except that it "shall have the right to continue the use of its grandstand and racetrack facility … for recreational and/or fairground activities other than motorized racing[.]" Ex. 1. The permissible activities included truck and tractor pulling contests during fair week each calendar year, two automobile demolition derbies each calendar year, musical presentations, bicycle racing, and rodeos. Pursuant to its terms,

---

[1] The Fair was previously called Kosciusko County Fair Association, Inc. At some point, the Fair's name was changed to Kosciusko County Community Fair, Inc. Given that the change appears to be a change in name only, we will hereinafter refer to both entities interchangeably as "the Fair."

the restrictive covenant was binding on the Fair and Original Homeowners and was enforceable by Original Homeowners and their successors and assigns.

[3] On May 2, 2018, Homeowners filed a complaint requesting injunctive relief against the Fair. Specifically, Homeowners sought to enforce the restrictive covenant and to prevent the Fair from conducting motorized races on its property. On May 16, 2018, the trial court found that Chris Cummins had standing to seek to enforce the restrictive covenant and issued a preliminary injunction enforcing the restrictive covenant and enjoining the Fair from conducting motorized racing on its property.

# 1. Standing

[4] The Fair contends that in order for Homeowners to have standing to sue to enforce the restrictive covenant, at least one of them must be an Original Homeowner or a successor or assign of one of the Original Homeowners listed in the covenant, and, because that is not the case, Homeowners lack standing to enforce the restrictive covenant. "The doctrine of standing focuses on whether the complaining party is the proper person to invoke the Court's power." *Hulse v. Ind. State Fair Bd.*, 94 N.E.3d 726, 730 (Ind. Ct. App. 2018) (internal quotation omitted). "The standing requirement restrains the judiciary to resolving only those cases and controversies in which the complaining party has a *demonstrable injury*." *Id.* "Whether a party has standing is a pure question of law that we review de novo." *Id.*

In arguing that Homeowners lack standing, the Fair alleges that the restrictive covenant at issue does not extend to them. "Restrictive covenants are a form of express contract between grantor and grantee." *Rasp v. Hidden Valley Lake, Inc.*, 519 N.E.2d 153, 157 (Ind. Ct. App. 1988). "Generally, the purpose behind a restrictive covenant is to maintain or enhance the value of land, often times by controlling the nature and use of surrounding lands." *Id.* These covenants obligate a party "to do or not to do a particular act." *Keene v. Elkhart Cty. Park & Rec. Bd.*, 740 N.E.2d 893, 896 (Ind. Ct. App. 2000). Covenants, when written, "are generally construed in the same manner as other written contracts, and we apply them according to their ordinary meaning when possible." *Land Innovators Co., L.P. v. Bogan*, 15 N.E.3d 23, 31 (Ind. Ct. App. 2014), *trans. denied*.

"Restrictive covenants run with the land if 1) the covenantors intended it to run, 2) the covenant touches and concerns the land, and 3) there is privity of estate between subsequent grantees of the original covenantor and covenantee." *Oakes v. Hattabaugh*, 631 N.E.2d 949, 952 (Ind. Ct. App. 1994), *trans. denied*. There are two types of privity, horizontal privity and vertical privity. *Columbia Club, Inc. v. Am. Fletcher Realty Corp.*, 720 N.E.2d 411 (Ind. Ct. App. 1999), *trans. denied*. "Horizontal privity is generally established by evidence that the original parties to the covenant had some mutual or successive interest either in the land burdened by the covenant or the land benefitted by it." *Id.* at 421. Vertical privity is established "where the party seeking to enforce the covenant and the party against whom it is to be enforced are successors in title to the property of the covenantee and covenantor respectively." *Id.*

[7]     The restrictive covenant at issue in this case provides as follows:

> [A]fter August 11, 1990, [the Fair] shall not use the Real Estate for motorized racing, except [the Fair] shall have the right to continue the use of its grandstand and racetrack facility on the Real Estate for recreational and/or fairground activities other than motorized racing, including but not limited to truck and tractor pulling contests during fair week each calendar year, two (2) automobile demolition derbies each calendar year, musical presentations, bicycle racing, and rodeos. The foregoing shall constitute *a covenant running with the Real Estate* and shall be binding upon [the Fair] and [Original] Homeowners and all persons claiming under them. This covenant shall be enforceable by [Original] Homeowners *and* their successors and assigns.

Ex. 1 (emphases added). The above-quoted language clearly indicates that the covenantor intended for the covenant to run with the land and it is undisputed that the covenant touches and concerns the land. As such, the only question remaining is whether there is privity of estate between Original Homeowners and Homeowners.

[8]     It is uncontested that James A. Cummins was one of the original covenantees. Chris Cummins testified that in 1998 he purchased the property that was owned by James when the restrictive covenant was executed. In light of this testimony, the trial court found that Chris Cummins is a successor in title to the real estate owned by James A. Cummins. The Fair's challenge to this finding amounts to nothing more than a request that we reweigh the evidence, which we will not do. *Great Lakes Anesthesia, P.C. v. O'Bryan*, 99 N.E.3d 260 (Ind. Ct. App. 2018). Because we agree that Chris Cummins is a successor in interest to

one of the Original Homeowners, we conclude that there is vertical privity of estate. As a result, the restrictive covenant runs with the land and Chris Cummins had standing to enforce the restrictive covenant.

## 2. Order Granting Preliminary Injunction

[9] The Fair also contends that the trial court erred in granting the preliminary injunction. "The issuance of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion." *Bowling v. Nicholson*, 51 N.E.3d 439, 443 (Ind. Ct. App. 2016), *trans. denied*. The decision to grant a preliminary injunction is measured by several factors: (a) whether the movant's remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (b) whether the movant had at least a reasonable likelihood of success at trial by establishing a prima facie case; (c) whether the threatened injury to the movant outweighed the potential harm to the non-movant that would result from the granting of an injunction; and (d) the public interest would not be disserved by the granting of a preliminary injunction. *Id.* The movant bears the burden to prove by a preponderance of the evidence that injunctive relief is warranted. *Crossmann Cmtys., Inc. v. Dean*, 767 N.E.2d 1035 (Ind. Ct. App. 2002).

### a. Adequacy of Remedies at Law

[10] The Fair claims that Homeowners failed to prove that their remedies at law were inadequate, thus causing them to suffer irreparable harm.

> Irreparable harm is that harm which cannot be compensated for through damages upon resolution of the underlying action. Mere economic injury is not enough to support injunctive relief. The trial court should only award injunctive relief where a legal remedy will be inadequate because it provides incomplete relief or relief that is inefficient to the ends of justice and its prompt administration.

*Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011) (internal quotations and citation omitted).

[11] Chris Cummins testified that the motorized racing would cause him irreparable harm because it "infringes on your time with your family to be able to go outdoors which is what most people do that live on a lake, [b]e it have family over, a cookout, to spend quality time with your family and friends and being able to talk and not have the noise and the dust and the loud speakers echoing across the lake and into your ear and then, more so, the investment that I worked hard in my life to buy that home on the lake." Tr. Vol. 2, p. 18. He further compared the noise coming from the racing cars to the noise that a chainsaw makes, giving off "a high pitch screech" that carries across the lake. *Id.* at 12. In finding irreparable harm, the trial court stated:

> In this case, there is no legal remedy that will adequately compensate [Homeowners]. There is no legal remedy that will compensate [Homeowners] for the noise and disruption to their use of their property. [Homeowners'] use of their real estate— once precluded or compromised by [the Fair]—is gone forever. [Homeowners] have established irreparable harm.

Appellant's App. Vol. II, p. 12. In challenging the trial court's finding, the Fair argues that Homeowners did not establish the monetary value of the harm. The Fair also points to the testimony of an individual who claims that the motorized racing at issue did not disrupt her use and enjoyment of her property. The Fair's arguments, however, amount to nothing more than a request for this court to reweigh the evidence, which, again, we will not do. *See O'Bryan*, 99 N.E.3d 260.

## b. Likelihood of Success at Trial

In arguing that Homeowners did not have a reasonable likelihood of success at trial, the Fair makes four claims. First, it claims that the restrictive covenant could not be enforced because it lacked an essential term. In making this claim, the Fair argues that a legal description of the benefitting properties was an essential term of the restrictive covenant. The Fair, however, failed to cite to any authority indicating such. The restrictive covenant clearly identified the burdened party and included a legal description of the burdened real estate. It also clearly identified the beneficiaries, i.e., the Original Homeowners. The language used in the restrictive covenant left no question as to the burdened party or real estate or to the beneficiaries. It also clearly stated the restrictions that were being placed upon the burdened property and clarified what uses were

prohibited and what uses were allowed.  We therefore conclude that the Fair has failed to prove that the restrictive covenant lacked an essential term.[2]

[13] The Fair next claims that Homeowners did not have a reasonable likelihood of success at trial because there was no horizontal privity.  In order for a restrictive covenant to run with the land, there must be privity of the estate between subsequent grantees of the original covenantor and covenantee.  *Oakes*, 631 N.E.2d 949.  Again, there are two types of privity, horizontal privity and vertical privity.  *Columbia Club*, 720 N.E.2d 411.  Although a panel of this Court has previously concluded that both vertical and horizontal privity must be proved when neither of the original covenantors is a party to the suit, that panel acknowledged in that same opinion that the horizontal privity requirement had been undermined by the frequent resort to the doctrine of equitable servitudes and expressed doubt about whether the requirement for horizontal privity had much continuing validity in Indiana.  *Moseley v. Bishop*, 470 N.E.2d 773 (Ind. Ct. App. 1984).

[14] In order to receive a preliminary injunction, Homeowners only had to show a reasonable likelihood of success at trial.  With respect to privity, Homeowners assert that they need not prove horizontal privity because Community Fair could easily be considered the same entity as the Kosciusko County Fair

---

[2] The Fair also relies on the Statute of Frauds which requires that certain contracts be in writing.  *See* Ind. Code § 32-21-1-1(b) (2002).  Reliance on the Statute of Frauds is misplaced, however, because the restrictive covenant was in writing and was recorded with the Kosciusko County Recorder's Office.

Association. Alternatively, Homeowners assert that even if Community Fair and the Fair Association were not considered the same entity, Homeowners could easily establish that they were entitled to relief under the doctrine of equitable servitudes because the restrictive covenant was recorded, giving the Fair notice of the covenant.[3] We need not decide whether Community Fair and the Fair Association are the same entity because our review of relevant authority suggests that Homeowners would likely succeed at trial using the equitable servitudes doctrine.

[15] The Fair also claims that Homeowners' action was barred by the doctrine of laches. "Laches is comprised of 1) an inexcusable delay in asserting a right, 2) an implied waiver from a knowing acquiescence in existing conditions, and 3) prejudice to the adverse party." *Oakes*, 631 N.E.2d at 953. "Laches implies something more than mere lapse of time; it requires some actual or presumable change of circumstances rendering relief inequitable." *Id.*

[16] In claiming that Homeowners' action was barred by laches, the Fair relies on this Court's opinion in *Oakes*. In that case, the movant did not voice any complaints for a period of two years after learning of the alleged violation of the restrictive covenants at issue. In denying the movant's request for injunctive

---

[3] Under the doctrine of equitable servitudes, "a landowner who has actual or constructive notice of a covenant concerning the land made by his predecessor in interest may be bound by the covenant even though the original covenantors were not in privity of estate." *Moseley*, 470 N.E.2d at 778 n.1.

relief, the court determined that the non-movants were prejudiced by the movant's unexplained delay in seeking relief.

[17]     The evidence in this case, however, does not support the Fair's assertion that Homeowners delayed in asserting their right to enforce the restrictive covenant. Chris Cummins testified that when the Fair began conducting motorized races, he and other affected homeowners expressed their opposition via letters sent to and in meetings with the Fair's representatives. Randall Shepherd, a member of the Fair's Board of Directors, testified that the Fair had conducted races including truck and tractor pulls[4] for the last decade and "the sprint, the series 600 races for the last three years." Tr. Vol. 2, p. 51. Shepherd admitted that the Board had received at least one letter from a homeowner asking the Fair to stop the motorized racing. Shepherd also testified that the Fair "tried to contact Chris [Cummins] to sit down with him and talk to him. Previously, two years ago or three years ago *before we started any of the racing*, we contacted Chris and he came in and we sat down and talked to him." *Id.* at 59 (emphasis added). When it became clear that their initial attempts to convince the Fair to comply with the restrictive covenant were unsuccessful, Homeowners filed suit. The evidence establishes that although Homeowners did not immediately file suit, they took other steps to voice their opposition to the Fair's violation of the restrictive covenant. We cannot conclude that Homeowners' action is barred

---

[4] Again, the restrictive covenant expressly allowed for truck and tractor pulling contests during fair week. The record is silent as to whether these truck and tractor pulls violated the restrictive covenant or occurred during fair week.

by the doctrine of laches merely because they first attempted to resolve the conflict without court intervention.

[18] The Fair lastly claims that Homeowners did not have a reasonable likelihood of success at trial because the restrictive covenant violated the rule against perpetuities. "The rule against perpetuities has to do with future estates which, by possibility, may not become vested within the time prescribed by law; it applies only to future estates which are contingent, and has no application to vested estates." *Swain v. Bowers*, 91 Ind. App. 307, 316, 158 N.E. 598, 601 (1927). We agree with the conclusion of the Court of Appeals of Arkansas that a restrictive covenant limiting the use of a parcel of land does not violate the rule against perpetuities even if it is of indefinite duration. *See Malone v. Guynes*, 250 S.W.3d 260 (Ark. Ct. App. 2007). The Fair's reliance on the rule against perpetuities is therefore misplaced.

## c. Injury to Movant Outweighs Harm to Non-Movant

[19] The Fair next challenges the trial court's determination that the harm that would be suffered by Homeowners if injunctive relief was denied outweighed the harm the Fair would suffer if injunctive relief was granted. In making this determination, the trial court found:

> Indiana law recognizes that restrictive covenants are a form of contract. If [Homeowners] are denied injunctive relief, they will be denied a benefit that they considered when they purchased their real estate, denied the benefit of their bargain, and denied use of their property. The harm to [the Fair] is that it will not be able to breach the Restrictive Covenants which it agreed to and

for which it received a valuable consideration (settlement of a lawsuit). The only "harm" suffered by [the Fair] of granting the injunction is being forced to abide by obligations to which it agreed. Thus, the balance of the harms clearly weighs in favor of [Homeowners].

Appellant's App. Vol. II, p. 12.

[20] Given that it is undisputed that the Fair had notice of the restrictive covenant, we agree with the trial court's finding that the only actual harm suffered by the Fair is that it would be forced to abide by its earlier bargain. The Fair argues on appeal that it would suffer approximately $115,000 in damages in 2018 and would be exposed to potential breach of contract claims brought by vendors if injunctive relief was granted. We note, however, that given its knowledge of the restrictive covenant, the Fair could not have reasonably relied on (1) any monies generated by motorized races or (2) conducting motorized races during its negotiations with potential vendors. The Fair's argument again amounts to a request for this court to reweigh the evidence, which we will not do. *See O'Bryan*, 99 N.E.3d 260.

## d. Public Interest

[21] The Fair last challenges the trial court's determination that the public interest would not be disserved by the granting of a preliminary injunction. In making this determination, the trial court found:

First, Indiana recognizes the freedom of parties to contract and granting the injunction will simply enforce the parties' agreement. Granting the injunction and upholding the parties'

contract would further the public interest. Second, restrictive covenants are clothed with a presumption of validity because homeowners make decisions to purchase their real estate based upon the existence of restrictive covenants. Failing to enforce a restrictive covenant deprives home buyers of the benefit of their bargain and diminishes property values. Third, the Restrictive Covenants resulted from the settlement of litigation. Indiana "strongly favors settlement agreements" to resolve disputes. Not enforcing the terms of a restrictive covenant that was put in place to settle a dispute encourages parties to file lawsuits, litigate, and to decline to enter into voluntary agreements to resolve disputes. Finally, the public interest will not be disserved by enjoining the motorized races, reducing noise pollution and maintaining the tranquility of the area and the lake.

Appellant's App. Vol. II, pp. 12–13. Without providing supporting evidence, the Fair asserts that stopping motorized racing disserves the public interest because motorized racing benefits the community by attracting consumers, creating jobs, and raising revenue. The Fair's assertion amounts to yet another request for this court to reweigh the evidence, which, again, we will not do. *See O'Bryan*, 99 N.E.3d 260.

[22] Judgment affirmed.

Riley, J., and Kirsch, J., concur.